UNITED STATES of America, Plaintiff,

v.

5,063.17 ACRES OF LAND, MORE OR LESS, SITUATE IN LAS ANIMAS COUNTY, COLORADO; Charles Gyurman Land & Cattle Company, et al., and Unknown Owners, Defendants.

UNITED STATES of America, Plaintiff,

v.

7,313.77 ACRES OF LAND, MORE OR LESS, SITUATE IN LAS ANIMAS COUNTY, COLORADO; Cheyenne Mining and Land Company, Inc., et al., and Unknown Owners, Defendants.

Civ. A. Nos. 82–A–1844, 82–A–1981.

United States District Court,
D. Colorado.

March 14, 1985.

Linda A. Surbaugh, Asst. U.S. Atty., Denver, Colo., for plaintiff.

Marlin D. Opperman, Opperman & Associates, P.C., Denver, Colo., for defendants in No. 82–A–1844.

Joseph M. Montano, Malcolm Murray, Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., Tuck Young, P.C., Pueblo, Colo., Alex S. Keller, Keller, Dunievitz, Johnson, & Wahlberg, Denver, Colo., for defendants in No. 82–A–1981.

## MEMORANDUM OPINION AND ORDER

ARRAJ, District Judge.

These two cases are before me on defendants' applications for attorneys' fees and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (1978) ("EAJA"). In November 1982, the United States Army acquired thousands of acres of land in Las Animas County, Colorado, for the Fort Carson Pinon Canyon Maneuver Site. This spawned numerous lawsuits, including the instant condemnation cases. *United States v. Cheyenne Mining and Land Company, Inc.* was tried to a jury July 25, 1983, through July 27, 1983, and final judgment was entered in favor of defendants in the amount of $1,067,552.00. Because the initial U.S. deposit of estimated just compensation was $608,910.00, the landowners recovered an additional $458,642.00. The second case, *United States v. Charles Gyurman Land and Cattle Company,* was also tried to a jury (October 18, 1983, through October 21, 1983). The original jury verdict and judgment was $852,936.00, but I granted the government's motion for remittitur and final judgment was reduced to $827,936.00. The deposit with the court totaled $582,300.00, so defendants recovered an additional $245,636.00.

Defendants Gyurman and Cheyenne Mining request $64,973.28 and $126,684.20 respectively in attorneys' fees and expenses under the EAJA. In support of their petitions, defendants contend that they are prevailing parties under the Act and that the position of the United States was not substantially justified. They rely heavily upon the fact that the amounts deposited with the court were substantially less than the judgments awarded. The government challenges the applicability of the EAJA to condemnation cases and argues, in the alternative, that neither party is a prevailing party under the Act and, even if they are prevailing parties, the government's position was substantially justified and therefore, attorney's fees should not be awarded.

Because I anticipate that many similar applications will follow, it is important to resolve the legal and practical problems surrounding these fee requests. The paramount issues raised by the instant petitions

are questions which the Tenth Circuit Court of Appeals has not yet considered: whether the EAJA applies to condemnation actions and, if so, when is a litigant a "prevailing party" and when is the government's position "substantially justified." In addition, these fee requests underscore the critical need for detailed guidelines regarding the content and organization of EAJA applications and affidavits. The judicial task of reviewing records of attorneys' hours is seldom easy and never pleasant. However, it is particularly burdensome and tedious when supporting affidavits fail to treat separately each attorney and each type of legal service which he/she rendered. I will address this problem by outlining a suggested specific format for such applications.

## I

■ The EAJA provides, in part:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and expenses, in addition to any costs awarded pursuant to [§ 2412(a)], incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C. § 2412(d)(1)(A).

Three circuit courts of appeal have concluded that the EAJA applies to condemnation actions. *U.S. v. 341.45 Acres of Land,* 751 F.2d 924 (8th Cir.1984); *U.S. v. 101.80 Acres of Land,* 716 F.2d 714 (9th Cir.1983); *U.S. v. 329.73 Acres of Land,* 704 F.2d 800 (5th Cir.1983) (en banc). *But see U.S. v. 160 Acres of Land,* 555 F.Supp. 84 (D.Utah 1982). These circuit courts reasoned that the plain language and the legislative history of the EAJA show that Congress intended that the Act apply to condemnation cases. The statutory language provides that the court shall award fees and expenses incurred by a prevailing party "in

*any civil action* (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action...." 28 U.S.C. § 2412(d)(1)(A) (emphasis added). Condemnation actions are civil actions and are not tort cases. I conclude that this statutory language is clear and, on its face, provides that the EAJA applies to condemnation actions.

The government asserts in its Opposition to Defendant's Motion for Fees and Other Expenses that Section 206 of the EAJA and the doctrine of "substantial re-enactment" preclude the application of the EAJA to condemnation actions. With respect to these arguments, I adopt the reasoning of the Eighth Circuit in *U.S. v. 341.45 Acres of Land, supra,* and conclude that the EAJA does apply to condemnation actions.

## II

Having concluded that the EAJA applies to condemnation actions, I must now determine how the Act applies to specific condemnation cases. The purpose of the EAJA is to award fees and expenses to successful litigants in cases where the government acted unreasonably. The Congress recognized that impecunious parties are often reluctant to challenge unreasonable governmental activity because of the cost involved. By shifting the cost in special circumstances, the Congress hoped to diminish this deterrent effect. Under the EAJA, only "prevailing parties" are entitled to fees and expenses. After a prevailing party submits an application for fees, the burden shifts to the government to prove that an award should not be made because its position was "substantially justified." *U.S. v. 329 Acres of Land, supra,* 704 F.2d 800, 803.

Condemnation actions are uniquely different from typical court actions which involve the liability or non-liability of the parties for certain alleged damages. For the most part, the only issue involved in condemnation cases is the value of the property taken, *i.e.,* the government asserts that the property is worth less than

the landowner claims it is worth. At trial, the government's asserted value becomes the "minimum" amount the landowner will recover. The landowner's asserted value is invariably significantly higher than the government's, thereby creating great potential for the landowner to recover significantly more than the government has offered. The landowner has a great incentive to hold out for a very high price and go to trial because, at the worst, the landowner will recover what the government asserts is the value of the land and, more often than not, the landowner will recover a compromise amount somewhere in between the two asserted values. See *U.S. v. 341.45 Acres of Land, supra,* 741 F.2d 1034, 1047 ("And quite often the jury or commission will follow neither parties' evidence or expert witnesses and instead award what is essentially a compromise amount higher than the government's valuation but lower than the property owner's.") Therefore, the landowner rarely stands to "lose" by going to trial in a condemnation action involving the issue of just compensation. Moreover, the higher the landowner's asserted value, the higher his award is likely to be in relation to the government's asserted value. It is in this context that the application of the EAJA must be considered in condemnation cases.

### A. *Prevailing Party.*

The EAJA unfortunately does not define "prevailing party" for purposes of condemnation cases. The Eighth Circuit concluded that prevailing party includes a property owner who wins by judgment or negotiation and settlement any amount more than the government's offer. I find this test inappropriate in light of the context of condemnation actions. Under this test, virtually every landowner will be a "prevailing party." I do not think Congress intended that the "prevailing party" threshold requirement be interpreted so broadly as to include virtually every litigant. This would

put a burden on the government to prove in almost every condemnation case that its position was "substantially justified."

The Fifth Circuit concluded that a prevailing party is a landowner who recovers "far more" than the government offered. *U.S. v. 329.73 Acres of Land, supra.* While this approach may come closer to what Congress intended, the standard set forth is so vague as to be unworkable. The same problem exists with the Ninth Circuit's definition of a prevailing party as a landowner whose award is "substantially greater" than the government's original deposit. See *U.S. v. 101.80 Acres of Land, supra.*

The proposed amendments to the EAJA contained a definition of "prevailing party" in condemnation actions which provides:[1]

> (H) "prevailing party", in the case of eminent domain proceedings, means a party who obtains a final judgment (other than by settlement), exclusive of interest, the amount of which is at least as close to the highest valuation of the property involved that is attested to at trial on behalf of the property owner as it is to the highest valuation of the property involved that is attested to at trial on behalf of the Government.

This definition of "prevailing party" is a sensible and fair approach and, therefore, I adopt it for purposes of the instant cases. This test can be applied in a workable fashion and is more in line with the reality of condemnation cases. The definition acknowledges that the jury award will quite often be somewhere in between the government's and landowner's asserted values, and prevents every landowner from being a "prevailing party." Moreover, this approach takes into account not only the government's asserted value in relation to the jury award, but also the landowner's

---

1. The proposed amendments, contained in H.R. 5479, were "pocket vetoed" by President Reagan. The President's veto message, set forth at Cong.Rec. H12292 (daily ed. Nov. 14, 1984), discusses the Administration's reasons for withholding approval of H.R. 5479. These reasons are unrelated to the proposed definition of prevailing party in condemnation cases.

asserted value in relation to the jury award. This is only fair in light of the fact that it is often the landowner's very high claims of value which cause the case to go to trial and create the potential for the jury's award to greatly exceed the government's valuation. Most importantly, this approach encourages *both* parties (and not just the government) to be more realistic with their respective claims of value.

Defendant Cheyenne Mining argues in its brief that H.R. 5479 has no applicability to the case at bar because when looking to legislative intent to divine the meaning of an ambiguous statutory provision, the courts must look to the intent of the legislature at the time of passage of the enactment and cannot be influenced by subsequent legislative activities. (Brief of Defendant at 2). In this regard, defendant asserts that "[t]he purpose of H.R. 5479 as applied to eminent domain actions was to alter the definition of prevailing party." (Brief of Defendant at 2). At the outset, I disagree with defendant's assertion that H.R. 5479 "alters" the definition of prevailing party. "Prevailing party" is not defined under the EAJA, and it is clear from the circuit court cases that courts are perplexed with the application of the prevailing party requirement in condemnation actions. H.R. 5479 would have been a clarification, and not an alteration, of the definition of "prevailing party." More importantly, however, I do not adopt H.R. 5479 because I feel bound by it as an enactment of legislative intent. Rather, the "prevailing party" definition contained in H.R. 5479 is a sensible suggestion which I find to be consistent with the legislative intent at the time of the enactment of the EAJA. I find this definition to be rational, workable, practicable, fair and just.

Therefore, I conclude that a "prevailing party" in condemnation actions is a landowner whose highest asserted value at trial is closer to the jury's verdict than the government's highest asserted value at trial.

## B. *Substantial Justification.*

Having determined when a landowner may be characterized as a prevailing party, the next question is whether the government's position was "substantially justified." The meaning of "substantially justified" is not defined in the EAJA. The Eighth Circuit determined that the government's position is substantially justified if the government relied upon expert witness appraisals in reaching its asserted value. See *U.S. v. 341.45 Acres of Land, supra.* This test is not helpful because the government almost always relies on expert appraisers. It is well known that appraisals of land can vary widely. A party is seldom hard pressed to find an expert appraiser who will testify on that party's behalf and disagree with the opposition's expert. It is not uncommon in condemnation cases to have property appraisals from opposing experts that are hundreds of thousands of dollars apart.

The Ninth Circuit has focused on the amount of the jury verdict in relation to the amount of the government's deposit in defining "substantially justified." *U.S. v. 101.80 Acres of Land, supra,* ("[T]he government's original deposit was wholly inadequate, representing only a fraction of the true value of the easement condemned as found by the jury. Under such circumstances, we cannot say the district court abused its discretion in concluding that the government's position was not 'substantially justified....' ")

■ Condemnation actions are unique in that they involve one discrete issue, *i.e.,* the value of property taken, and generally do not present novel or unusual legal issues affecting the strength of the government's position. Due to this lack of complexity in such actions, an objective, quantitative approach is suitable in defining substantial justification. Therefore, I adopt the definition for "prevailing party" stated earlier to be used for defining "substantially justified." Hence, if the amount of the jury's verdict is closer to the landowner's highest asserted value at trial than it is to

the government's, then the government's position was not substantially justified.[2]

### III

■ I turn now to the two instant cases. In *Cheyenne Mining,* the government's highest value attested to at trial was $695,000, the landowner's highest value attested to at trial was $2,194,000 and the amount awarded by the jury was $1,067,552. The verdict was $372,552 more than the government's highest value but $1,126,448 less than the landowner's highest value. Therefore, the defendant landowner is not a prevailing party in this case and is not entitled to attorneys' fees and expenses under the EAJA.

■ In *Gyurman,* the government's highest value attested to at trial was $583,510, the landowner's highest value attested to at trial was $883,818, and the amount awarded by the jury was $852,936. The verdict was $269,426 more than the government's highest value but only $30,882 less than the landowner's highest value. In *Gyurman,* the defendant landowner is a prevailing party and the government's position was not substantially justified. Therefore, the defendants in *Gyurman* are entitled to attorneys' fees and expenses under the EAJA. Unfortunately, the calculation of the defendant's fees cannot be done at this time. Defendant's application and supporting affidavits do not contain the necessary information.

■ A petition under the EAJA for attorneys' fees and expenses in condemnation cases shall contain a separate detailed description of each attorney's services. This should be broken down further into subcategories reflecting the separate charges and total amounts of time spent on any single type of legal service. It should state the customary and usual hourly rate for each attorney (by name) for the services listed.

| EXAMPLE | | Hours | Customary and usual hourly rate | Rate requested |
|---|---|---|---|---|
| 1. Jones—attorney | | | | |
| A. Legal Research | | | | |
| 3/22/82—re: valuing leaseholds | | 3 | 90 | 90 |
| 3/25/82—re: "highest and best use" | | 2 | 90 | 95 |
| Subtotal | | 5 | 450 | 460 |
| B. Conferences | | | | |
| 4/1/82—with co-counsel RAP re: direct exam of appraiser | | 1 | 90 | 90 |
| Subtotal | | 1 | 90 | 90 |
| C. Trial Preparation | | | | |
| 4/3/82—opening statement/ direct exam of appraiser | | 3 | 90 | 90 |
| Subtotal | | 3 | 270 | 270 |
| Total hours | | 9 | | |

**2.** This approach does not remove all of the court's discretion in awarding fees because the EAJA provides that the court shall award fees to prevailing parties "unless the court finds that the position of the United States was substantially justified *or that special circumstances make an award unjust."* 28 U.S.C. § 2412(d)(1)(A) (emphasis added). If special circumstances exist making an award unjust, a court has discretion to decline to make such an award.

| EXAMPLE | Hours | Customary and usual hourly rate | Rate requested |
|---|---|---|---|
| 2. Smith—attorney | | | |
|   A. Document Preparation | | | |
|     1/12/82—drafting inter-rogatories | 1 | . 60 | 60 |
|     5/10/83—motion for new trial | 3 | 60 | 60 |
|     6/10/83—notice of appeal and docketing statement | 2 | 60 | 60 |
| Subtotal | 6 | 360 | 360 |
| Total hours | 6 | | |

Several important points should be noted. First, a meaningful description of the subject researched, or topic discussed, or document drafted, etc., must be included. A single word entry such as "conference" is inadequate. I must be able to determine whether the hours spent are reasonable and not duplicitous.

Two final matters should be considered in the supporting affidavits. With respect to expert witnesses or appraisers, it is important to note that the multiplying rates cannot exceed the highest rate of compensation paid for an expert by the United States. Consequently, there should be two calculation columns: one reflecting this ceiling level and another reflecting the party's requested amount. Lastly, paralegal expenses, law clerk services and all other expenses must be detailed enough to allow the Court to evaluate the nature of the expense. To be sure, "legal research" alone, is inadequate; the description must include something more specific.[3]

Accordingly, it is

ORDERED that defendant Cheyenne Mining's application for attorneys' fees and expenses under the EAJA is DENIED;

ORDERED that defendant Gyurman's application for attorneys' fees and expenses under the EAJA is GRANTED in accordance with the conditions hereinafter set out.

ORDERED that defendant Gyurman shall, within 10 days from the date of this Order, file a supplement to its last application for fees and expenses in accordance with the instructions contained in this Order.

ORDERED that counsel for both parties shall confer within 15 days from the date the defendant files its supplement in an attempt to agree on the amount of reasonable attorney's fees and expenses. If no such agreement can be reached, the Court will then enter an appropriate Order, awarding such fees and expenses as in its discretion defendants may be entitled.

---

**3.** "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee. Where settlement is not possible, the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant should exercise 'billing judgment' with respect to hours worked, ... and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims.

We reemphasize that the district court has discretion in determining the amount of a fee award." *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).