UNITED STATES of America,
Plaintiff–Appellee,

v.

0.376 ACRES OF LAND, et al.,
Defendants–Appellants.

No. 86–5905.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 17, 1987.

Decided Jan. 26, 1988.

---

**820**

Bernard E. Bernstein (argued), Allyn Lay, Bernstein, Susano & Stair, Beverly S. Burbage (argued), Richard T. Beeler (Knox Co.) Knoxville, Tenn., for defendants-appellants.

Thomas P. Carolan, Vicki L. Plaut (argued) U.S. Dept. of Justice, Land and Natural Resources Div., Robert L. Klarquist, Washington, D.C., for plaintiff-appellee.

Before MERRITT, KRUPANSKY and NELSON, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

This is an appeal from a district court order denying the award of attorney fees in three eminent domain cases. Each of the landowners was a "prevailing party" within the definition set forth in 28 U.S.C. § 2412(d)(2)(H), but the district court declined to award fees and expenses under the Equal Access to Justice Act because the court found that the government had sustained its burden of showing that its position in the proceedings was "substantially justified." Finding no abuse of discretion, we shall affirm the district court's order.

I

In November of 1984 the United States filed complaints in condemnation and declarations of taking to acquire three separately owned parcels of unimproved real estate in a certain city block in downtown Knoxville, Tennessee. Each of the parcels was being used for surface parking. Their combined area came to approximately 52,-708 square feet. The declarations of taking were followed by deposits into the registry of the court of sums totaling $943,-850, the government's estimate of just compensation for the land taken. See 40 U.S.C. § 258a.

The cases were consolidated, and the issue of compensation was referred to a three-person commission appointed by the district court pursuant to Rule 71(A), Fed.R.Civ.P.

Among the valuation guidelines provided the commissioners by the district court was a standard-form instruction, captioned "Sales to the Government," that read as follows:

"While the prices paid in sales of similar property between private parties are admissible, the price the Government has paid for other property is not admissible in evidence and is incompetent to prove the market value of land under condemnation. [footnote omitted.] Such sales are not a fair criterion of value for the reason that they are not free sales but are in the nature of a compromise to avoid a lawsuit."

At the request of the landowners, and over the objection of the United States, the district court subsequently qualified its earlier instructions by advising the commissioners that

"[i]n these particular cases that you are to consider, evidence may be presented concerning sales of property to Knoxville's Community Development Corporation ('KCDC'). When the evidence thus presented relates to comparable properties, that evidence should be considered by you and you should determine how much weight to give to that evidence."

The commissioners conducted a view of the landowners' property and heard evidence of just compensation. The landowners presented valuation testimony from two experienced and well-qualified expert appraisers, Robert J. Fletcher and Claude M. Wood. Mr. Wood expressed the opinion that the land was worth $30 per square foot, and Mr. Fletcher opined that it was worth $29.50 per square foot. The United States offered the testimony of Mr. William S. Broome, MAI, also an experienced and qualified real estate appraiser; Mr. Broome expressed the opinion that the land was worth $18.30 per square foot.

All three of the expert witnesses used comparable sales in arriving at their valuations, but they differed as to the comparability of acquisitions made by the Knoxville Community Development Corporation, a governmental body that had the power of eminent domain. The commissioners explained, in their report, that

"[t]he landowners relied upon the Hilton block (Exhibit L–22) which was acquired in 1979 by Knoxville Community Development Corporation ('KCDC') at an average price of $26.27 per square foot and which was adjusted by the landowners witnesses to $30.00 and $29.57 to reflect the change in market between the date of acquisition and the date of taking in 1984. The correctness of these figures was questionable as to whether they included improvements or as to whether the improvements had value at the time of taking. Mr. Broome, the witness for the Government, indicated that he had

appraised many of these tracts for as low as $15.00 per square foot and as high as $24.00 per square foot for the land without the improvements which gave an adjusted land value of approximately $20.00 per square foot. See Exhibit L–10. Mr. Broome did not use this property as comparable by reason of the fact that it was part of the property acquired by KCDC.

\*      \*      \*      \*      \*      \*

"The landowners likewise relied upon the East–West Mall property lying between Gay Street and Market Street north of Church Street, see Exhibit L–13, which was sold in 1973 and 1974 to KCDC at an average price, after razing, of $24.11. Based upon sales of other properties and the fact that this was property bought under threat of condemnation, it appears to be overpriced for some reason known only to KCDC. Particularly since property bought subsequently to said dates sold for less, we consider a fair value of this property as a comparable to be $24.00 per square foot adjusted for 1984.

\*      \*      \*      \*      \*      \*

"... [M]any of the properties which were used as comparables pursuant to the instructions to the Commission were based on properties acquired by KCDC, who had the right of imminent [sic] domain and the properties may have been acquired to fill special projects for public use, and were later sold by KCDC for less than $2.50 per square foot. This, coupled with the variations in prices paid for the various tracts composing the comparable properties, particularly the Hilton Hotel tract, rendered comparison prices for comparable properties difficult."

The commission questioned the comparability of some of the transactions used by the government's appraisers as well. After weighing all the evidence, the commission determined that each of the parcels it was responsible for valuing was worth $25 per square foot—a number close to the mid-point between the highest valuation attested to by the landowners' witnesses

($30) and the valuation attested to by the government's witness ($18.30). The total value of the three parcels, as determined by the commissioners, came to $1,317,689. The government filed no objections to the report of the commissioners, and the district court entered a judgment fixing just compensation on the basis of the commissioners' valuation of $25.00 per square foot.

The landowners subsequently moved for an award of attorney fees and costs under the Equal Access to Justice Act. That statute provides, in pertinent part, that a court "shall" award attorney fees and other expenses to a "prevailing party" in a civil action brought by the United States (given net worth qualifications that were met by the prevailing parties here), *"unless the court finds that the position of the United States was substantially justified...."* 28 U.S.C. § 2412(d)(1)(A) (emphasis supplied). As reinstated in amended form in 1985, the Act provides that " 'prevailing party', in the case of eminent domain proceedings, means a party who obtains a final judgment ... the amount of which is at least as close to the highest valuation of the property involved that is attested to at trial on behalf of the property owner as it is to the highest valuation of the property involved that is attested to at trial on behalf of the Government." 28 U.S.C. § 2412(d)(2)(H).

The government did not deny that the landowners were prevailing parties in the case at bar. It is indisputable that the amount of the final judgment ($25 per square foot) was at least as close to the landowners' highest valuation ($30) as to the government's ($18.30), and each of the landowners thus unquestionably comes within the statutory definition of a "prevailing party."

The government maintained, nonetheless, that its position was substantially justified. The government based its argument not only on the existing record but also on newly filed affidavits purporting to show pre-trial settlement offers and describing appraisals made by a certain Mr. Pipkin. That individual had not testified at the hearings conducted by the commissioners, but his appraisals were said to have been used in determining the amounts the government deposited into the registry of the court when the land was taken. The landowners objected vigorously to any use of the government's affidavits, and filed a counter-affidavit contesting the government's account of the settlement offers.

The district court, in a memorandum opinion explaining its decision to deny attorney fees, agreed with the landowners that the position taken by the government in settlement negotiations was irrelevant. In this connection the court relied on 28 U.S.C. § 2412(d)(1)(B), which provides, in pertinent part, as follows:

"Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought."

The district court added that

"the legislative history supports confining analysis of the Government's position to the record when the litigation goes to a final decision. 1985 U.S.Code Cong. & Ad.News at 141. Thus, the court will be restricted to a review of the record only in this cause and will not take into consideration any extrinsic evidence or testimony on this issue."

The district court went on to note, however, that the record of the eminent domain proceedings disclosed the government's deposit of $943,850 into the registry of the court. This was only $18,850 less than the $962,700 valuation of the government's trial witness, Mr. Broome. The district court saw no harm in acknowledging that the amount deposited had been based on Mr. Pipkin's appraisals. In concluding that the position of the United States was substantially justified, the district court also noted that "both of the experts relied upon by the United States [i.e., both Broome and Pipkin] are highly qualified real estate experts regarding commercial property, and the

Court believes that the credibility of their testimony [sic—Pipkin did not testify] is reflected in the compromise decision reached by the Commissioners."

On appeal, the landowners argue that the record of the eminent domain proceedings disclosed nothing about Mr. Pipkin or his qualifications. Even if such information were relevant, moreover, which the landowners deny, they point out that the affidavit respecting the Pipkin appraisal was technically defective because of the affiant's failure to demonstrate that he had personal knowledge of the facts and was competent to testify thereon.

The landowners' main argument is that the effect of the 1985 version of the Equal Access to Justice Act was to make it impossible for the government to show that its position was substantially justified in any eminent domain proceeding where the landowner is the prevailing party. (The landowners would doubtless concede that attorney fees could still be denied should the court find that "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A)). Even if the statute does not render it impossible for the government to show that its position was substantially justified, finally, the landowners contend that no such showing was made here.

We agree that the district court's reliance on Mr. Pipkin's expertise was misplaced, but we find the error harmless. We are unable to agree with the landowners' claims as to the effect of the 1985 amendments; we do not believe that the government was foreclosed from urging that the position it took in the eminent domain proceedings was substantially justified, and on the facts of the particular case before us we find no abuse of discretion in the district court's determination that the government carried the day on the "substantial justification" issue.

## II

Prior to 1985 the courts were split on the question whether the Equal Access to Justice Act applied to eminent domain proceedings at all. Congress answered that question in the affirmative with the enactment of Public Law 99–80 (1985), a statute that revived the Equal Access to Justice Act following its expiration in 1984 and, among other things, added a definition of "prevailing party" for use "in the case of eminent domain proceedings...." 28 U.S.C. § 2412(d)(2)(H).

In a case decided several months before the enactment of Pub.L. 99–80, but after congressional passage of similar legislation that had been vetoed on grounds having nothing to do with this issue, the United States District Court for the District of Colorado looked to the vetoed bill's definition of "prevailing party" in condemnation actions—a definition identical to that ultimately adopted in Pub.L. 99–80—and decided to follow it as a "sensible and fair approach" to construing a statutory term that did not yet have a statutory definition. *United States v. 5,063.17 Acres of Land*, 607 F.Supp. 311, 314 (D.Colo.1985), *appeal pending*, No. 86–1291 (10th Cir.) [*See* 836 F.2d 480 (10th Cir.1987)]. The prescience of the district court in concluding that "a 'prevailing party' in condemnation actions is a landowner whose highest asserted value at trial is closer to the jury's verdict than the government's highest asserted value at trial," *id.* at 315, was vindicated when Congress, in enacting the bill signed into law as Pub.L. 99–80, adopted a definition saying precisely that.

The landowners in the case at bar place heavy reliance on the Colorado district court's decision because of the way in which that court treated the "substantial justification" issue:

"Having determined when a landowner may be characterized as a prevailing party, the next question is whether the government's position was 'substantially justified.' The meaning of 'substantially justified' is not defined in the EAJA. The Eighth Circuit determined that the government's position is substantially justified if the government relied upon expert witness appraisals in reaching its asserted value. This test is not helpful because the government almost always relies on expert appraisers. It is well known that appraisals of land can vary widely. A party is seldom hard pressed

to find an expert appraiser who will testify on that party's behalf and disagree with the opposition's expert. It is not uncommon in condemnation cases to have property appraisals from opposing experts that are hundreds of thousands of dollars apart.

\* \* \* \* \* \*

"Condemnation actions are unique in that they involve one discrete issue, *i.e.* the value of property taken, and generally do not present novel or unusual legal issues affecting the strength of the government's position. Due to this lack of complexity in such actions, an objective, quantitative approach is suitable in defining substantial justification. Therefore, I adopt the definition for 'prevailing party' stated earlier to be used for defining 'substantially justified.' Hence, if the amount of the jury's verdict is closer to the landowner's highest asserted value at trial than it is to the government's, then the government's position was not substantially justified." *Id.* at 315–16 (citation omitted).

The Colorado district court went on to say, in a footnote, that

"[t]his approach does not remove all of the court's discretion in awarding fees because the EAJA provides that the court shall award fees to prevailing parties 'unless the court finds that the position of the United States was substantially justified *or that special circumstances make an award unjust.*' 28 U.S.C. § 2412(d)(1)(A) (emphasis added). If special circumstances exist making an award unjust, a court has discretion to decline to make such an award." *Id.* at 316 n. 2.

What the Judiciary Committee of the House of Representatives said of the "prevailing party" definition ultimately adopted by Congress was that the definition "has two purposes."

"First, it makes clear that condemnation cases are covered by the Act. Second, it provides a standard for determining who the prevailing party would be in such actions." H.R.Rep. No. 120, 99th Cong., 1st Sess., pt. 1 at 18, *reprinted in* 1985 U.S.Code Cong. & Admin.News 132, 147.

Conspicuous by its absence in this explanation of purposes of the 1985 amendment is a third purpose—one that the Colorado court presumably would have been willing to attribute to the amendment as finally adopted, but that has no basis at all in the actual statutory language. The missing purpose, of course, is the purpose of defining "substantially justified" where condemnation cases are concerned.

If Congress had intended to tell courts that the position taken by the government can never be found to have been "substantially justified" where the landowner has prevailed, it would have been a simple matter to say so. Congress could have provided a definition of "substantially justified position" written in such a way as to exclude the position of the United States in any eminent domain proceeding where the landowner was the "prevailing party," or Congress could simply have said "Unless the court finds that special circumstances make an award unjust, a court shall award fees and other expenses to the prevailing party (other than the United States) in the case of eminent domain proceedings." Congress said nothing of the sort, however, and we must not write into the statute a provision that Congress did not see fit to put there. See *Commissioner v. Asphalt Products Co.*, 482 U.S. ——, 107 S.Ct. 2275, 96 L.Ed.2d 97 (1987).

The text of the Equal Access to Justice Act, as originally adopted in 1980, shows that Congress did not intend to provide an automatic award of attorney fees to any citizen who prevailed against the government. The legislative history confirms that the statute means what it says; the concept of automatic awards to prevailing parties was proposed in a predecessor bill and "was rejected because it did not account for the reasonable and legitimate exercise of governmental functions and thus might have a chilling effect.... The standard and burden of proof adopted [in the bill that became law] represents an acceptable middle ground between an automatic award of fees and [a more] restrictive stan-

dard proposed by the Department of Justice." H.R.Rep. No. 1418, 96th Cong., 2nd Sess., at 13–14, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4953, 4984, 4992–93.

■ The 1985 amendments did not adopt the "automatic award" concept that had previously been rejected. The amendments made it clear that a landowner who prevailed in a condemnation case would not be precluded from receiving attorney fees, but the statutory language provides no basis at all for supposing that a prevailing landowner would receive attorney fees automatically. "Prevailing party" and "substantially justified" are separate and distinct terms, and they have separate and distinct meanings. The meaning of the first term has now been supplied by Congress, and the meaning of the second has not. For us to infuse the second with the meaning provided by Congress for the first would obliterate the distinction between the two terms and make one or the other redundant. We simply are not prepared to construe this statute as saying that any position taken by the government in a condemnation case, no matter how reasonable it may be, must be held to have been unjustified simply because the landowner ultimately prevailed.

■ In a case decided under the 1985 legislation the Court of Appeals for the Eighth Circuit reversed an award of attorney fees in a land condemnation action notwithstanding that the landowners to whom attorney fees had been awarded by the district court came well within the statutory "prevailing party" definition. *United States v. 1,378.65 Acres of Land Situate in Vernon County,* 794 F.2d 1313 (8th Cir.1986). Although we cannot endorse every word in the Eighth Circuit's opinion, it seems to us that the court was clearly correct in holding that a landowner who prevails in a condemnation action is not automatically entitled to an award of attorney fees.

The facts of *Vernon County* are instructive on the question whether the position taken by the government in the case at bar was or was not substantially justified. The property condemned in *Vernon County* was a flowage easement that was worth $485,000, according to the landowners' valuation expert, and $115,000 according to the government's. The mid-point between the two valuations was $300,000, and the commissioners appointed to determine the value came up with a valuation of $325,000 —a figure that exceeded the mid-point by almost eight percent. In the case at bar the mid-point between the landowners' highest valuation and the government's was $24.15 per square foot. The commissioners' valuation—$25 per square foot— exceeded the mid-point by less than four percent. The discrepancy, in percentage terms, was far greater in *Vernon County* than it was in the case at bar, yet the Court of Appeals declared in *Vernon County* that "[w]e cannot say that the Government's appraisals on their face are so out of line with the outcome of the litigation— the Commission's award—as to suggest that the Government's offers in reliance on them were not substantially justified." *Id.* at 1318. For the trial court to have said otherwise, the Eighth Circuit held, was an abuse of discretion.

It is true that valuation of the flowage easement involved in *Vernon County* required "a peculiarly technical factual determination that at best must be imprecise," because it required an estimate of land values both before and after the land became subject to an increased risk of occasional flooding. *Id.* at 1318. It is true generally, however, that "[a]ppraising real estate is more an art than a science; it is incapable of mathematical precision and implicates methods of judgment." *Id.* at 1318–19. The latter observation has particular force in the case at bar, where the free-spending habits of the Knoxville Community Development Corporation—a governmental body which, possessed of the power of eminent domain, had bought up land in downtown Knoxville at $24.11 per square foot and sold it for less than $2.50 per square foot—obviously made comparison, as the commissioners put it, "difficult."

The Eighth Circuit applied a relatively strict standard in determining whether the government's position in the *Vernon County* litigation was so clearly justified

that it was an abuse of discretion for the district court to find the position not substantially justified: "[w]e conclude that the Government now must show not merely that its position was marginally reasonable; its position must be clearly reasonable, well founded in law and fact, solid though not necessarily correct." *Id.* at 1318 (footnote omitted).

The Fourth and Fifth Circuits have recently said that the government need only show that its position was "reasonable" in fact and law. *Herron v. Bowen,* 788 F.2d 1127, 1130 (5th Cir.1986); *Russell v. National Mediation Board,* 775 F.2d 1284, 1288–89 (5th Cir.1985); *Pullen v. Bowen,* 820 F.2d 105, 108 (4th Cir.1987). The Federal Circuit has said that the government must show that its position was "clearly reasonable." *Gavette v. Office of Personnel Management,* 808 F.2d 1456, 1467 (Fed.Cir.1986) (en banc).

■ This circuit has not yet spoken authoritatively on the test for determining whether the government's position is substantially justified, and the question is likely to be addressed by the full court in *Riddle v. Secretary of Health & Human Services,* No. 86–5228, a pending case that this court has elected to rehear en banc. We shall not presume to anticipate the decision of the full court, but we do have some sympathy with Judge Wilkinson's observation in *Pullen,* 820 F.2d at 108, that "[i]n practice, any difference between the 'reasonable in fact and law', the 'more than merely reasonable', and the 'clearly reasonable' standards appears more semantic than real." We think it was well within the province of the district court in this case to find, under any of the various standards that have been suggested, that the government's position as to the value of the landowners' property was substantially justified.

The amount that the commissioners determined the land was worth—$25 per square foot—was only 85 cents above the mid-point between the two relevant appraisals. If the commissioners had set the value at $24.11—the average price paid by the Knoxville Community Development Corporation for the East–West Mall property—the landowners would not even have

qualified as prevailing parties, and thus could not have been awarded attorney fees in any event. (It is true that the mall purchases were made in 1973 and 1974 dollars rather than in 1984 dollars, but as the commissioners pointed out, the mall property was "bought under threat of condemnation," and "it appears to be overpriced for some reason known only to KCDC.") The commissioners had been instructed to make their own determination of how much weight to give the prices paid by KCDC, and the commissioners' comments suggest that the government's appraiser, a well-qualified expert, was by no means unreasonable in concluding that the prices paid by KCDC were not comparable to what would be paid in arms length transactions between a willing buyer under no compulsion to buy and a willing seller under no compulsion to sell. And the commissioners had no criticism of the government's expert comparable to that which they made of the witness who said the land was worth $30. That witness, they said, "hedged when he was questioned as to whether the subject property could be developed profitably with a land cost of $30 per square foot...."

Although the government argues that "substantial justification [must] be judged on a case-by-case basis," the government also urges us to hold, in keeping with the Eighth Circuit decision in *Vernon County,* 794 F.2d at 1319, that "absent evidence of bad faith, the government's position in a condemnation case is substantially justified if its evidence at trial is consistent with the value found by an independant, qualified appraiser."

We are by no means convinced that the government will always find itself in a safe harbor, absent evidence of bad faith, if its position, however extreme, is supported by the valuation of a qualified independant appraiser. There is no need to decide that issue here, however; the position taken by the government's appraiser in this case was far from "outragous," to borrow an adjective used by the *Vernon County* court, *id.* at 1318, and we are not presented with the question of whether the landowners would have been entitled to recover their attorney fees if the government's ap-

praiser had taken a position that was clearly indefensible.

The question of substantial justification "is essentially one of reasonableness," as the legislative history shows (1980 U.S. Code Cong. & Admin.News at 4992) and as this court noted in *Tennessee Baptist Children's Homes, Inc. v. United States*, 790 F.2d 534, 540 (6th Cir.1986), citing *Kreimes v. Department of Treasury*, 764 F.2d 1186, 1190 (6th Cir.1985); and "[a] trial judge's ruling in this regard is to be modified only when there is a demonstration of an abuse of discretion." *Id.*, citing *Matthews v. United States*, 713 F.2d 677, 682 (11th Cir. 1983) and *Hoang Ha v. Schweiker*, 707 F.2d 1104, 1105 (9th Cir.1983). There was no abuse of discretion in the case at bar. The district court's conclusion as to the justification for the position taken by the government was eminently sound, in our view, and although the district court's opinion was embellished with some references to a non-testifying expert whose qualifications and views were not properly before the court, we have no doubt that the conclusion reached by the district court would have been exactly the same if that expert had been ignored completely.

The orders of the district court denying the landowners' motions for attorney fees and expenses are AFFIRMED.

KRUPANSKY, Circuit Judge, concurring.

Although I concur with the decision to affirm the district court's determination that the government's position in this case was substantially justified, I write separately to indicate my reasons for reaching that conclusion.

I take no exception to the rule adopted by this circuit prescribing that Equal Access to Justice Act (EAJA) cases should be considered and decided on an ad hoc basis,[1] and accordingly direct my attention to the interfacing of the EAJA with condemnation trials and the impact of that interaction upon the award of legal fees. Condemnation proceedings, unlike most multi-issue civil actions giving rise to the award of attorneys fees pursuant to the EAJA, are unique in that they present, in most instances, a single factual issue: namely, the fair market value of the condemned parcel of real property.

Fair market value of any given parcel of property is proved by the testimony of experts in the person of appraisers who, by the application of universally accepted and applied appraisal theories and practices, arrive at the relative value of that parcel of realty. The American Institute of Real Estate Appraisers (Institute), the Society of Real Estate Appraisers (SREA), as well as other nationally recognized professional real estate appraising societies, have accepted basically three uniform approaches to the appraisal of real estate that have been utilized by qualified practicing appraisers throughout the nation. The three recognized theories or approaches as they are characterized are as follow. First, the market data approach, which is a basic rather simplistic method employed to appraise buildings and land. This approach estimates the fair market value of the property in controversy by juxtaposing it with recent, comparable property sales in the geographic area. Second, the income approach, which is generally utilized for appraising commercial property. Under this approach fair market value is estimated by capitalizing the net income attributable to the real estate. Third, the cost approach, pursuant to which theory the fair market value of the property is determined by appropriately depreciating the replacement cost of the structures when new to arrive at their present value and adding thereto the value of the land calculated in accordance with the comparable sales approach.

Albeit, the accepted valuation approaches do not result in absolute property values and thus provide a margin of latitude within which the conclusion of different qualified appraisers acting in good faith could vary. However, the pragmatics of a condemnation trial afford the compensating factor in arriving at a reasonable fair market value of the property in issue. *See,*

---

**1.** *See, e.g., Trident Marine Constr., Inc. v. District Eng'r,* 766 F.2d 974, 980 (6th Cir.1985); *Kreimes v. Department of Treasury,* 764 F.2d 1186, 1190 (6th Cir.1985); *Sigmon Fuel Co. v. Tennessee Valley Auth.,* 754 F.2d 162, 166 (6th Cir.1985).

*e.g., United States v. 1,378 Acres of Land Situate in Vernon County,* 794 F.2d 1313, 1318–19 (8th Cir.1986) (Ascertainment of fair market value is "incapable of mathematical precision and implicates methods of judgment."). In a condemnation trial, the ultimate factual issue of determining the fair market value of any given parcel of real estate is submitted to the trier of fact, which fact finder, after having had the opportunity of assigning credibility and weighing the testimony of the expert witnesses presented by the adversary parties to the action, determines that value. The government's interest in protecting the public fisc provides substantial justification for it to insist that a finder of fact resolve factual disputes as to fair market value in a manner equitable to both parties to the action.

In light of the foregoing where the government has demonstrated that it engaged qualified real estate appraisers who have implemented accepted appraisal practices and procedures to determine fair market value, and where it has shown that it relied upon the valuations arrived at by such appraisals, I would extend a presumption of good faith to the government and conclude that it was substantially justified in pursuing its condemnation action to trial to resolve the issue of fair market value in keeping with its responsibility to protect the taxpayers' purse.[2] Under this procedure the burden of going forward is shifted to the plaintiff property owner who is free to rebut the presumption in favor of the government by affirmative, credible proof that the government has, by some collateral action, acted in bad faith.

Accordingly, I conclude that in the event the property owner has failed to carry the burden of effectively rebutting the presumption which arises in favor of the government, under circumstances where the government has engaged and relied

upon the advice and evaluation of qualified real estate appraisers applying accepted appraising practices, the government should prevail in an action initiated pursuant to the EAJA for attorneys fees. In the instant case, the government introduced sufficient, competent evidence to demonstrate that it had relied upon the opinion of a qualified and independent appraiser to determine the fair market value of the property in question. Because the property owners failed to introduce any evidence that the government had acted in bad faith in pursuing a trial of this case, I concur in the decision to affirm the district court's opinion denying attorneys fees in this case.

MERRITT, Circuit Judge, dissenting.

I disagree with the majority that the District Court's "conclusion as to the justification for the position taken by the government was eminently sound." The District Court's decision was premised on an erroneous view of what constitutes substantial justification in eminent domain cases. The District Court's, and the majority's, view of the applicable law is too narrow and results in relieving the government of most of the burden of proof which it is supposed to carry in Equal Access to Justice Act attorney fees determinations.

The District Court premised its decision on the proposition that if the government hires qualified experts and deposits sums of money with the court which are consistent with those experts' appraisals, the position of the government is substantially justified. The only inquiry thus made by the District Court is whether the government hired a qualified appraiser and relied on the appraiser's valuation by depositing a comparable sum of money with the court.

This approach, which mirrors that taken by the Eighth Circuit in *United States v. 1,378.65 Acres of Land Situate in Vernon County,* 794 F.2d 1313 (8th Cir.1986), cre-

---

**2.** *Accord United States v. 1,378.65 Acres of Land Situate in Vernon County,* 794 F.2d 1313, 1319 (8th Cir.1986)

When in a condemnation action, the Government selects experienced, qualified, competent appraisers, and consistently relies on their valuations in its offers of just compensation, without any evidence of bad faith on its part, its course of conduct is solid, well found-

ed and clearly reasonable. Its position therefore is substantially justified.

*and United States v. 341.45 Acres,* 751 F.2d 924, 940 (8th Cir.1984)

[T]he government's litigation position is substantially justified if the amount established by the government during trial is based upon and consistent with the appraisals or other evidence of valuation.

ates a virtually irrebuttable presumption in favor of the government. The government is already required by law to appraise property which it intends to acquire through the eminent domain power, *see* 42 U.S.C. § 4651(2) (1982). Therefore, assuming that the government will comply with the law and use an appraiser, the only showing it must make is that its appraiser was qualified and that it relied on the appraisal. In effect, all that is guaranteed to landowners is a form of procedural due process: the government must follow a set of established procedures in eminent domain proceedings. The Equal Access to Justice Act, however, requires a higher showing. Not only must the government follow reasonable *procedures,* the government must take a reasonable *position.* The Act was intended to provide attorney fees unless the government's case has a "reasonable basis both in law and fact." H.Rep. No. 1418, 96th Cong.2d Sess. 10, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4984, 4989. *See also Trident Marine Construction, Inc. v. District Engineer,* 766 F.2d 974, 980 (6th Cir.1985). In refusing to award fees, the District Court ascertained whether the government followed the procedures required by law, but ignored the factual question at the crux of the issue, *viz.,* whether the position taken by the government was reasonable in light of all the evidence in the case.

The majority appears to reject the District Court's bright line test, but ignores the burden of proof. The majority rightly refuses to construe the statute as saying the government's position must be held to be unjustified simply because the landowner prevailed. *Contra United States v. 5,063.17 Acres of Land, More or Less, Situate in Las Animas County,* 607 F.Supp. 311, 314–15 (D.Colo.1985). However, the 1985 amendment that defined "prevailing party" in eminent domain cases is indicative of Congressional intent that landowners recover attorney fees in at least some situations. As in other types of cases under EAJA, the burden of proof is on the government to show that its position was substantially justified. H.Rep. No. 1418, 96th Cong.2d Sess. 10–11, *reprinted in* 1980 U.S.Code Cong. & Admin.News at

4989. Rather than presenting a standard by which to judge whether the government has carried its burden, the majority merely notes that the government's position was not "outrageous" or "clearly indefensible." This conclusion is apparently reached by simply evaluating the appraisals. Without more, I cannot say that the government has carried its burden of proof.

I would hold that for the government to carry its burden of substantial justification in an eminent domain case, it must present some evidence other than the bare fact that it employed a qualified appraiser and relied on his or her appraisal. Because the government did not do so in this case, I would reverse the judgment of the District Court and award attorney fees to the appellants.