**ALFORD D. BENJAMIN, Plaintiff**

v.

**FRANCILLA E. BENJAMIN, Defendant**

Family No. D-42/1987

Territorial Court of the Virgin Islands

Div. of St. Croix at Kingshill

December 20, 1990

MARK L. MILLIGAN, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

CONSTANCE E. KRIGGER, ESQ., Christiansted, St. Croix, V.I., *for defendant*

CABRET, *Judge*

## MEMORANDUM OPINION

In this action for divorce, the Court entered a decree of divorce which awarded a 55% interest and a 45% interest to the Plaintiff and Defendant, respectively, in the parties' jointly owned property located at No. 36 Peter's Rest, Christiansted. The decree further gave the Plaintiff a right of first refusal to purchase the interest of Defendant. The only issue left to be determined is the fair market value of the property. In the effort to determine the fair market value of the property, appraisal reports were submitted by both the Plaintiff and the Defendant, as well as by a court appointed appraiser. The value of the property was estimated to be $55,000, $80,080, and $92,537 respectively. It is now incumbent upon the Court to determine which appraisal, if any, most accurately reflects the true value of the property.

### Description of The Property

The property located at No. 36 Peter's Rest, Christiansted (sometimes referred to as "subject property"), is a rectangular plot of land consisting of roughly one-half acre and having thereon a dwelling structure of approximately 1400 square feet. The land is located on top of a gently sloping hill accessible by way of a paved public road. The driveway is unpaved and although the landscaping is good there is some need for additional care.

The dwelling located on the property consists of three bedrooms and one bath, with a combination living-dining room and kitchen. There is a septic system in place and a cistern that runs parallel to the dining room. The structure itself is concrete and in good condition except for some windows that are rusted at the bottom, and a loose cistern cover. The dwelling was originally intended to be a two story structure, but construction of the second floor has either been delayed or canceled. Consequently, the roof of the structure is flat, with pipes and other construction necessities protruding therefrom.

42

## DISCUSSION

### A. *Approaches to Appraising Real Property*

 As previously noted, the objective of an appraisal is to determine the fair market value of the property being appraised. Fair market value is generally said to be the amount a purchaser, willing but not obliged to buy, would pay a seller who is willing but not obliged to sell. Arkansas State Highway Commission v. Delaughter, 468 S.W. 2d 242, 247 (Ark. 1971). "Fair market value of any given parcel of property is proved by the testimony of experts in the person of appraisers who by the application of universally accepted and applied appraisal theories and practices, arrive at the relative value of that parcel of property." U. S. v. 0.376 Acres of Land, 838 F.2d 819, 827 (6th Cir. 1988) (Krupansky, J. concurring).[1] In arriving at the fair market value of property the appraiser might utilize any one or all of three generally accepted uniform approaches: 1) the cost (or original-cost or reproduction cost-less-depreciation) approach; 2) the comparable sales approach, sometimes referred to as the market or market value or market data approach; and 3) the income (or economic) approach. 7 P. Rohan & M. Reskin, Nichols on Eminent Domain § 4.08[4] (3d ed. 1971).

 The comparable sales approach is the preferred method for the valuation of improved real property. "This approach estimates the fair market value of the property in controversy by juxtaposing it with recent, comparable property sales in the geographic area". U. S. v. 0.376 Acres of Land, 838 F.2d at 827. The comparable sale must be of substantially the same type of property as the subject, and located in the same general area. 7 P. Rohan & M. Reskin, supra, § 4.08[4][a]. The sale should also have been in good faith, voluntary, and within a time period not too remote from the date of valuation of the subject. Id. Generally, evidence of the sale of similar property in the immediate vicinity, recent in time, is going to be extremely persuasive as to the market value of the subject. See Mike Golden, Inc. v. Tenneco Oil Co., 450 N.W.2d 716, 719 (N.D. 1990) (citing R. Vogel, Observations on the Trial of Eminent Domain Cases, 16 The Practical Lawyer 40, 45 (Oct. 1970)).

---

[1] Although this case and other cases cited herein were decided in the context of condemnation proceedings, the appraisal methods used are the same as the approaches utilized in the case at bar.

■ ■ The cost approach is most often used where there are no comparable sales and the property being appraised is not income producing property. 7 P. Rohan & M. Reskin, supra, § 4.08(4)(b). Under this approach, fair market value is determined by first estimating the cost of reproducing or replacing the structure, then determining the accrued depreciation from all causes (physical, functional, and external) and subtracting the depreciation from the reproduction cost, and finally adding thereto the value of the land. See American Institute of Real Estate Appraisers, The Appraisal of Real Estate, 479–80 (6th ed. 1973).

■ Lastly, under the income approach the fair market value is determined by capitalizing the net income attributable to the property, that is, the value of the property is that sum, at the going rate of return, which will yield an amount equivalent to the annual net income.[2] See 7 P. Rohan & M. Reskin, supra § 4.08(4)(c). The income approach is most useful in valuing commercial property and is most often restricted to such use. U. S. v. 0.376 Acres of Land, 838 F.2d at 827.

## B. *The Appraisal Reports*

The Plaintiff submitted the report and testimony of Augustin Doward, a licensed real estate appraiser with approximately 15 years experience of real estate appraising in the Virgin Islands. Mr. Doward testified that he has received designations from the American Society of Appraisers and from the National Association of Independent Appraisers. In making his appraisal Mr. Doward used a uniform residential appraisal report form. He testified that he utilized and considered all three approaches in arriving at a fair market value of $55,000.

The evidence shows that utilizing the cost approach Mr. Doward measured the dwelling to be 1400 square feet, and estimated the cost of reproducing the building at $60 per square foot for a total of $84,000. To this amount he added the cost of reproducing the 52

---

[2] Capitalization is said to be a procedure in the appraisal process by which the value of a property can be estimated from the quantity, quality, and durability of its net income expectancy. American Institute of Real Estate Appraisers, supra, at 370. There are several methods for capitalizing income, An analysis of the various capitalization methods is beyond the scope of this opinion, but a thorough treatment can be found in the American Institute of Real Estate Appraisers, The Appraisal of Real Estate (6th ed. 1973).

square foot porch at a cost of $25 per square foot for a total estimated reproduction cost of $85,300. From this amount Mr. Doward subtracted his estimate of the physical, functional, and external depreciation of the property. His estimate of the physical depreciation of the dwelling was $34,120 due to the age and condition of the building. He further attributed $4,265 to external depreciation because the building's windows are rusted, the cistern cover is loose, and the grass around the building is heavily overgrown and requires cutting. He also testified that he estimated the functional depreciation at $12,795 primarily due to the fact that the building has only one bathroom, and the combination living-dining room and kitchen are in close proximity or parallel to the cistern. After subtracting the total depreciation from the cost of reproduction, Mr. Doward added $18,000 for the value of the land, and another $10,000 for improvements to the driveway for a total estimated value at the cost approach of $62,120.

For his estimate of fair market value based on the comparative sales approach Mr. Doward compared three properties that were sold a few months before the valuation of the subject property. Comparable No. 1, located two miles south of the subject in Catherine's Rest, is a six room 1,709 square foot house that sold for $60,000. Comparable No. 2 is a 5 room 1,555 square foot house, located two miles south of the subject in Estate Humbug, that sold for $90,000. Comparable No. 3, located three miles east in Eliza's Retreat, is a six room, 1,120 square foot house that sold for $70,000.

Mr. Doward admitted at trial that his analysis under the comparison approach was difficult because the subject property is an incomplete building, and furthermore each comparable was located in a different neighborhood from the subject property, and each was at least fifteen years older than the subject property. Nonetheless, Mr. Doward determined the value range of the subject property to be from $47,000 to $59,000.[3] In the end Mr. Doward concluded that the fair market value of the subject property under the sales comparison approach is $53,000.

Mr. Doward also calculated the fair market value of the subject property under the income approach. He estimated that the property could be rented at a monthly rate of $500. This sum was then

[3] When comparing sales of similar property, the appraiser may have to make adjustments. For instance, a comparable property that has more baths than the subject, will be adjusted downward in order to reflect the lesser value of the subject.

multiplied by a gross rent multiplier of 120, for a total estimated value of $60,000 under the income approach.[4] Weighing the value obtained under each approach equally, Mr. Doward stated that in his opinion the value of the property is $55,000.

The Defendant presented the testimony and appraisal report of William R. Hall. Mr. Hall has been a general contractor for eleven years and an appraiser for two years. Prior to this case Mr. Hall had appraised only two properties. He submitted his appraisal on the same type of form used by the Plaintiff's appraiser, Mr. Doward. Mr. Hall based his appraisal of the property solely on the cost approach. He testified that he rejected the comparable sales approach because there were no truly similar sales in the same area and within a reasonable period of time from the date of his appraisal. He further testified that he did not estimate the fair market value based on the income approach because the subject was being used as a residence and not as income producing property.

Mr. Hall estimated the reproduction cost of the building to be $70,080. This number was arrived at by multiplying his estimation of the size of the structure, which he determined to be 1168 square feet, by the cost of construction, $60 per square foot. From this amount he subtracted $5,000 for physical depreciation based solely on the fact that the structure is between eight and ten years old, and $3,000 for external depreciation because some windows on the structure were rusting and had to be replaced. Mr. Hall made no deductions for functional depreciation. He then added the estimated value of the land, $18,000, to come up with a fair market value under the cost approach of $80,080.

The other appraisal before the Court is that of the court appointed appraisers, Isabel Mason and George Farchette. Ms. Mason and Mr. Farchette submitted a joint appraisal. They were not present at trial and the exact basis of their appraisal is unclear. From their report it seems that they may have utilized a variation of the cost approach. They apparently estimated the reproduction cost of the structure at

_____

[4] Mr. Doward used a variation of the income approach earlier explained. Rather than capitalize net income, he estimated that the subject property could be rented for $500 per month, and multiplied that amount by a gross rent multiplier (GRM) of 120. The GRM is a factor reflecting the relationship between the gross annual income of real estate and its sale price or value. In this instance the GRM must have been derived from the sale of a comparable property. Use of this method appears to be generally accepted as an income approach to appraising real property. See American Institute of Real Estate Appraisers, supra, at 284.

$74,537. They estimated the size of the structure to be 1,500 square feet, more or less, and further estimated the construction cost at approximately $50 per square foot. To this amount they added the value of the land, $18,000, for a total estimated "fair current value" of $92,537.

## C. *Analysis*

Preliminarily it must be noted that the appraisal process is at best an inexact science. Indeed, in U.S. v. 0.376 Acres of Land, supra, the court noted that "[a]ppraising real estate is more an art than a science; it is incapable of mathematical precision and implicates methods of judgment." Id. at 825 (quoting United States v. 1,378.65 Acres of Land, 794 F.2d 1313, 1318 (8th Cir. 1986)). It is evident that Plaintiff's appraiser Mr. Augustin Doward agrees with that observation. At trial, he testified that an estimate of value in an appraisal report:

[i]s a judgment call based on my opinion as to what the property value—what the physical condition of the . . . property was.

Appraising is not a specific profession. It's a lot of opinions based on certain facts. It's not a 1, 2, 3, situation. You can't add up 1, 2, and 3 and say that's the figure. It is not an exact science, so to speak.

(Transcript at 32).

Nonetheless, the issue of the property's value is squarely before the Court, and in determining the fair market value of the subject property the Court need not adopt the conclusions of any particular appraisal report. See OMP v. Security Pacific Business Finance. Inc., 716 F. Supp. 251, 254 (N.D. Miss. 1989) (the court stated that it found the appraisal reports useful but did not accept the appraisals' conclusions).

The Court will not consider the appraisal submitted by the court appointed appraisers. Neither Ms. Mason nor Mr. Farchette was available to testify at trial concerning the basis for their estimate of the fair market value. Even if it were admissible, the appraisal report submitted by Ms. Mason and Mr. Farchette is simply too vague and too general to stand alone. Appraising is not an exact science, but it is not so inexact as to be completely arbitrary.

The Court will therefore rely on the appraisals given by Mr. Doward and Mr. Hall. In doing so, the Court is of the opinion that

emphasis should be placed on the cost approach in valuing the subject property. Although the sales comparison analysis is the most reliable approach to valuing improved residential property, the three properties used by Mr. Doward in his analysis are not truly comparable. Each comparable property is located at least two miles away from the subject property and in different neighborhoods. It is questionable whether a house in Catherine's Rest or Humbug or Eliza's Retreat is truly comparable to a house in Peter's Rest due to the differences in those neighborhoods. Indeed, Mr. Doward's analysis concludes as much due to the substantial adjustments that had to be made in order to bring the value of the comparables down to the value of the subject.[5] Also, Mr. Doward himself testified that the subject property is an incomplete structure, and that there is no identifiable market for incomplete structures. The age of the comparables is also a factor. Each is at least 15 years older than the subject property. Furthermore, Mr. Hall testified that he could find no truly comparable sales in Peter's Rest.

Similarly, Mr. Doward's valuation under the income approach has been accorded little weight because the subject property has been and is being used as a principal residence, and not as commercial or income producing property. The cost approach is therefore the most reliable method for estimating the fair market value of the subject property under the circumstances.

Using the cost approach the Court finds the structure to consist of a dwelling containing 1,400 square feet at a cost of $60 per square foot, and a 52 square foot porch at a cost of $25 per square foot. The total reproduction cost of the structure therefore, is equal to $85,300, as stated by Mr. Doward.[6] The main difficulty with the appraisals in this case however, is the tremendous range in the estimates for total depreciation of the dwelling structure. The estimates range from $8,000 to $51,180. Mr. Doward deducted $34,120 for physical depreciation. He testified that the basis for such a substantial deduction is that the dwelling is in generally poor condition. The poor condition is mainly due to the fact that the house is incomplete, and there are pipes protruding from the roof. On the other hand, Mr. Hall deducted

---

[5] In making the comparisons, Mr. Doward had to adjust each of the comparables downward. He adjusted comparable no. 1 by $13,000, comparable no. 2 by $31,000, and comparable no. 3 by $18,000.

[6] (1,400 sq. ft. x $60) + (52 sq. ft. x $25) = $85,300

48

only $5,000 for physical depreciation due to the poor condition of the house. The Court finds that due to the age and condition of the structure, $34,120 accurately reflects the physical depreciation of the house.

 Mr. Hall did not make a deduction for functional depreciation, but Mr. Doward estimated $12,795 for functional depreciation merely because the structure has only one bathroom. The Court believes that $12,795 is an excessive amount in the absence of other factors, especially since it would cost substantially less than that amount to install a second bathroom. Accordingly, the Court agrees with Mr. Hall that there should be no deduction for functional depreciation. The Court further finds that Mr. Doward's deduction of $4,265 for external depreciation due to the uncut grass, rusted windows, and a loose cistern cover, is amply supported by the evidence. In this regard, the Court notes Mr. Hall deducted $3,000 for external depreciation just for the rusted windows alone.

Thus, the total depreciation (physical, functional and external) of the structure is $38,385.[7] The depreciated value of the structure is therefore $46,915.[8] To this amount should be added the value of site improvements ($10,000), and the value of the site itself ($18,000), for a total fair market value at the cost approach of $74,915.[9]

## CONCLUSION

As the finder of fact, the Court has considered the three appraisals submitted in this case and given the appropriate weight to each. The Court has determined that the cost approach is the most reliable appraisal method under the circumstances of this case. For the most part, Mr. Doward's conclusions have been adopted, except in so far as functional depreciation is concerned. The Court agrees with Mr. Hall that there shouldn't be any deduction for functional depreciation simply because the house has only one bathroom. Accordingly, the Court finds the fair market value of the property to be $74,915.

## ORDER

IN ACCORDANCE with the Memorandum Opinion issued herewith, it is hereby

---

[7] $34,120 + 0 + $4,265 = $38,385
[8] $85,300 - $38,385 = $46,915
[9] $46,915 + $10,000 + $18,000 = $74,915

ORDERED, ADJUDGED and DECREED that fair market value of the jointly owned property of Arnold D. Benjamin and Francilla E. Benjamin located at No. 36 Peter's Rest, Christiansted, shall be set at $74,915.