**UNITED STATES of America,
Appellant.**

v.

**1,378.65 ACRES OF LAND, MORE OR LESS, SITUATE IN VERNON COUNTY, STATE OF MISSOURI, and Laurance Phister, et al., Appellees.**

No. 85–2021.

United States Court of Appeals,
Eighth Circuit.

Argued April 16, 1986.

Decided July 1, 1986.

Rehearing and Rehearing En Banc
Denied July 31, 1986.

Jacques B. Gelin, Washington, D.C., for appellant.

Thomas E. Barzee, Jr., N. Kansas City, Mo., for appellees.

Before LAY, Chief Judge, and BRIGHT and ROSENN,* Senior Circuit Judges.

ROSENN, Circuit Judge.

The United States appeals from the district court's[1] award of attorney's fees to defendants in this condemnation action, arguing that its position was substantially justified. The Government's various offers of compensation for the condemnation matched the estimates of its qualified appraisers. We agree that the Government showed its position with respect to land compensation to be substantially justified within the meaning of the Equal Access to Justice Act, 28 U.S.C.A. § 2412 (West Supp.1986) (the Act), and reverse the district court's award.

## I.

The defendants, Laurance Phister, Alice Phister, and the testamentary trust of Harriet Phister (collectively the Phisters) each own undivided partial interests in approximately 3,000 acres of land situated near Horton, Missouri. Nearly half the land, some 1,379 acres, will be subject to occasional flooding on completion of the Truman Dam and Reservoir Project. The Phisters do not reside on the property but use tenant farmers to raise grain and commercial loggers to harvest and remove timber on the land. The parties stipulate that although the Phisters had a combined net worth in excess of $2,000,000, their combined net worth was less than $5,000,000 and they had fewer than 500 employees working the land at the time of the taking, as required to qualify under the Act, 28 U.S.C.A. § 2412(d)(2)(B) (West Supp.1986) (applicable maximum now $7,000,000).

In 1978, the Government sought to purchase a flowage easement over the land for $140,000, its value according to an appraisal performed by Oliver Dane, a retired Corps of Engineers employee. Some eight months later, based on Dane's revised appraisal, the Government raised its offer to $211,000. The Phisters refused the Government's second offer, stating that they believed they could secure $100,000 more through a court proceeding. *See United States v. 1,378.65 Acres of Land,* 614 F.Supp. 594, 595 (W.D.Mo.1985) (stipulated findings of fact) (*1,378 Acres*). The Government then proceeded to file a declaration of taking in the district court, which referred the question of just compensation for the easement to a three member Commission appointed under Fed.R.Civ.P. 71A(h). The Commission received appraisal reports from Hubert A. Riebold, for the Phisters, and James L. Sawyers, for the Government.

Sawyers and Riebold are members of the American Institute of Real Estate Appraisers and recipients of the Institute's highest designation, the MAI. It is undisputed that Sawyers made his appraisal without knowing what Dane's prior appraisals had been. Dane had requested after a previous trial appearance as an expert witness that the Government not use his services as an expert witness in the future. Dane had been accepted as a qualified expert appraiser in many prior condemnation proceedings.

---

* Max Rosenn, Senior Circuit Judge for the Third Circuit Court of Appeals, sitting by designation.

1. The Honorable John W. Oliver, Senior District Judge, United States District Court for the Western District of Missouri.

Sawyers and Riebold used similar appraisal methods. To evaluate the loss in value of the land caused by the greater risk of flooding following construction of the dam, they calculated separately the value of the land without and with the risk of flooding. To arrive at each value, they compared the prices similar plots of land had brought at sale, adjusting these to take account of the advantages and disadvantages of the land in question. The Commission also adopted the same method.

Riebold estimated the value of the Phisters' land at $2,660,000 before the Government's easement increased the risk of flooding. Sawyers estimated the value at $2,075,000, and the Commission found a value somewhat close to Sawyers', $2,301,000. If the Commission had averaged the two figures, it would have calculated the before-taking value at $2,362,000. Riebold estimated the after-taking value at $2,175,000. Sawyers estimated $1,960,000, and the Commission largely agreed with Sawyers, finding an after-taking value of $1,976,000. As a result of these calculations, the Commission awarded the Phisters $325,000, or $25,000 more than the average of the $115,000 amount of just compensation proposed by Sawyers and the $485,000 compensation proposed by Riebold.

In reviewing the two appraisals, the Commission repeatedly found Riebold's estimates "somewhat high" and Sawyers' "somewhat low" without ever questioning their competence or honesty. The Commission's separate calculation of before and after prices was generally *less* critical of Sawyers' conclusions than Riebold's. It found Riebold's estimate of damage to irrigation equipment "unsupported by the evidence," for instance, and noted that Sawyers "has slightly overvalued the timberland" but also "slightly underestimated" the value of the cropland and structural improvements after the taking.

After the district court approved the Commission's award, the Phisters applied in the district court for attorney's fees under the Act, which awards fees to private parties who prevail in a civil action against the United States in certain circumstances where the Government's position was not "substantially justified." *See* 28 U.S.C. § 2412(d)(1)(A). The parties stipulated that $22,380 in fees are at issue. Because the applicability of the Act to condemnation actions was an unclear question then pending in this court, the district court stayed its disposition until this court's decision in *United States v. 341.45 Acres of Land,* 751 F.2d 924 (8th Cir.1984) (*341 Acres*).

Following *341 Acres,* the district court held that the Act applied to this case, that the Phisters were a prevailing party, and that the Government's position was not substantially justified. *1,378 Acres,* 614 F.Supp. at 597, 603. The district court found that the Government had insufficiently explained the disparity between its last settlement offer of $211,000 based on Dane's estimate and its trial offer of $115,000 based on Sawyers' appraisal. It placed particular weight on the awards Commissions had made in 41 other taking cases handled by the Phisters' law firm, in all of which the Commission had awarded higher sums than that proposed by the Government, and in all but five cases an award closer to the landowner's proposed figure than to the Government's. 614 F.Supp. at 598 and 604–11 (appendix summarizing other awards). The court without discussion also criticized Dane's "personal record ... of particularly debased appraisals," *id.* at 598, and at length attacked the Government's nationwide approach to resolving condemnation disputes as producing an insufficient number of settlements. *Id.* at 598–603. The court did not criticize Sawyers' appraisal methods or point to any specific flaws in the appraisals the Government relied on for its settlement offers in this case or at trial.

## II.

Congress passed the Act to encourage relatively impecunious private parties to challenge abusive or unreasonable governmental behavior by relieving such parties of the fear of incurring large litigation

expenses. *Spencer v. NLRB*, 712 F.2d 539, 549 (D.C. Cir.1983), *cert. denied*, 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984); *see* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 15, *reprinted in* 1980 U.S. Code Cong. & Ad. News 4994. In relevant part, the Act provides

> [A] court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified.

28 U.S.C. § 2412(d)(1)(A). Unlike most fee-shifting schemes provided by statute, the Act relieves the Government from liability for the fees of a prevailing opponent if it shows its position to be substantially justified. *See Spencer*, 712 F.2d at 550–51. *Cf., e.g.*, 29 U.S.C. § 216(b) (1982) (fair labor standards actions); 42 U.S.C. § 1988 (1982) (civil rights actions). Until this court's decision in *341 Acres* and Congress' most recent amendments, the means for applying the Act to condemnation actions in this circuit had been in doubt.

When Congress enacted the Act in 1980, it was made applicable to all suits pending on October 1, 1981, as was this suit. Congress renewed the Act retroactively in amended form last year. Pub.L. No. 99–80, 99 Stat. 183 (1985) (the Amendments). The Amendments "apply to cases pending on ... the date of enactment of this [amending] Act." Pub.L. No. 99–80 § 7(a), 99 Stat. at 186. The district court entered its final judgment in this case before the Amendments were enacted, although the Government did not file its appeal until a week later. In applying the Act's original October 1, 1981 effective date, this court interpreted "cases pending" to include cases in which the district court had entered a final judgment, but an appeal was pending. *United States for Heydt v. Citizens State Bank*, 668 F.2d 444, 446 (8th Cir.1982). *See United States v. Kemper Money Market Fund, Inc.*, 781 F.2d 1268, 1270 n. 1 (7th Cir.1986) (1985 Amendments apply where appeal argued but still pending when enacted). Congress in enacting the Amendments intended to clarify the Act, not to alter it. *See* H.R.Rep. No. 120, 99th Cong., 1st Sess. 21 (1985), *reprinted in* 1985 U.S. Code Cong. & Ad. News at 149. In keeping with *Citizens State Bank*, we conclude that the Amendments apply to the present action.

The Government's principal grounds before the district court for opposing fees under the Act were that the Act did not provide for awards in condemnation actions, that the Phisters had not prevailed, and that the Phisters were not the sort of party entitled to fees under the Act. After similar arguments were largely rejected by *341 Acres*, the focus of argument before the district court in this case turned to whether the Government's position was substantially justified.

This court found in *341 Acres* and the Amendments confirmed that the Act allowed fee awards for prevailing landowners in condemnation actions. 751 F.2d at 936; H.R.Rep. No. 120, *supra* at 118, *reprinted in* 1985 U.S. Code Cong. & Ad. News at 147. We defined as a prevailing party in a condemnation action any defendant who obtained anything more at trial than the Government had offered as a settlement. 751 F.2d at 938. The Amendments rejected this broad definition, providing instead that a landowner has prevailed if the award received is as close or closer to its highest appraisal at trial than it is to the Government's highest appraisal at trial. Pub.L. 99–80 § 2(c)(2)(A), 99 Stat. at 185 (codified at 28 U.S.C.A. § 2412(d)(2)(H) (West Supp.1986)); *see* H.R.Rep. No. 120, *supra* at 18, *reprinted in* 1985 U.S. Code Cong. & Ad. News at 147.

Under *341 Acres*, the Phisters would be deemed prevailing parties by a decisive margin, as would be landowners in almost every condemnation action brought to trial, because from the cases collected in the district court's opinion and our own observation it would appear that most adjudicated condemnation awards represent a compromise of reasoned appraisals. Following the Amendments, however, the

Phisters have prevailed by only a narrow margin. Their award of $315,000 is only $25,000 greater than the average of Riebald's and Sawyers' appraisals, and any award less than that average would not entitle them to attorney's fees.

If the Government shows that its position was substantially justified, the Phisters will not be entitled to attorney's fees under the Act even though they prevailed before the Commission. 28 U.S.C. § 2412(d)(1)(A). This court found in *341 Acres*, and the Amendments confirmed, that in evaluating the Government's claimed substantial justification, both its prelitigation action in seeking a settlement and its posture at trial should be considered. 751 F.2d at 940; Pub.L. 99–80 § 2(b), 99 Stat. at 184. *See* H.R.Rep. No. 120, *supra* at 16, *reprinted in* 1985 U.S. Code Cong. & Ad. News at 144–45. So as to prevent a fee application under the Act from sprouting into a second major litigation, the 1985 Amendments limit the district court's determination of the Government's substantial justification to "the record ... which is made in the civil action for which fees and other expenses are sought." Pub.L. 99–80 § 2(b), 99 Stat. at 184–85 (codified at 28 U.S.C.A. § 2412(d)(1)(B) (West Supp.1986.)); *see* H.R.Rep. No. 120, *supra* at 13–14, *reprinted in* 1985 U.S. Code Cong. & Ad. News at 141–42 ("the 'substantial justification determination' will not involve additional evidentiary proceedings"). Regrettably, the district court did not have the guidance of these Amendments limiting the record for review.

This court discussed at length how a district court should evaluate substantial justification:

If the government's appraisers are qualified or the other evidence of valuation is sufficient, the government's prelitigation position or offer is substantially justified if it is based upon and consistent with the appraisals or other evidence of valuation. Similarly, the government's litigation position is substantially justified if the amount established by the govern-ment during trial is based upon and consistent with the appraisals or other evidence of valuation. The district court should focus upon the relationship between the government's offer, the appraisals, and the valuations established by the government's expert witnesses during trial, rather than the relationship between the government's offer or deposit and the property owner's counteroffer, if any, or the jury award....

751 F.2d at 940–41 (footnote and citation omitted). The Government's settlement offer should also be close to the valuations established by the Government's expert witnesses during trial, with "[a]ny substantial disparity between the offer, the appraisals, and the government's trial evidence ... explained by the government." *Id.* at 940. The Government's position will not be compared with the landowner's counteroffers or the jury award to determine its substantial justification, because the Government's obligation "is to pay just compensation, not premium prices." *Id.* at 941 n. 13.

■ The congressional report accompanying the Amendments alters our understanding of substantial justification in another respect. In the original legislative history of the Act, the House Judiciary Committee stated that "[t]he test of whether or not a government action is substantially justified is essentially one of reasonableness." H.R.Rep. No. 1418, *supra* at 13, *reprinted in* 1980 U.S. Code Cong. & Ad. News at 4992. Although we have recognized that Congress by rejecting an amended standard of "reasonable justification" had suggested that a slightly higher standard might apply, we have followed the reasonableness standard in *341 Acres* and in many other decisions. *See* 751 F.2d at 939–40. In its report accompanying the Amendments, however, the Committee stated that in evaluating substantial justification, "the test must be more than mere reasonableness." H.R.Rep. No. 120, *supra* at 9, *reprinted in* 1985 U.S. Code Cong. &

Ad.News at 132.[2] In reconciling these expressions of congressional intent, we believe that Congress did not intend a reasonableness standard for substantial justification of government action to be weak or relaxed. In meeting that standard, we conclude that the Government now must show not merely that its position was marginally reasonable; its position must be clearly reasonable, well founded in law and fact,[3] solid though not necessarily correct. *See Gavette v. Office of Personnel Management*, 785 F.2d 1568, 1579 (Fed.Cir.1986) (in banc); *McDonald v. Schweiker*, 726 F.2d 311, 316 (7th Cir.1983). *But see Russell v. National Mediation Board*, 775 F.2d 1284, 1289 (5th Cir.1985) (finding legislative history irreconcilable and retaining reasonableness standard).

With these considerations in mind we turn to the facts of this particular case and consider the circumstances if any in which the Government might not be substantially justified in relying on the valuations of competent, experienced, qualified appraisers for its settlement and trial positions. Our review is limited to determining whether the district court abused its discretion by finding that the Government's position was not substantially justified. *Keasler v. United States*, 766 F.2d 1227, 1231 (8th Cir.1985). We note initially that the task of estimating the land value lost by the increased risk of occasional flooding requires a peculiarly technical factual determination that at best must be imprecise. As this case illustrates, a relatively small variation in opinion over the values of land before and after an increased risk of flood-ing can result in a large difference in proposed compensation.

Following the approach of *341 Acres*, we evaluate the substantial justification of the Government's settlement and trial positions by considering the appraisals on which they are based. We place no significance on Riebold's higher appraisal for the Phisters or on the Commission's final award, except to notice that the differences between the various amounts are not outrageous. The Commission found a before-taking value that was somewhat closer to Sawyer's than to Riebold's appraisal, and an after-taking value that was substantially closer to Sawyers' appraisal, although its compensation award was closer to that Riebold proposed. The Commission's award of $325,000 exceeds by only $25,000 the average of Sawyers' and Riebold's appraisals, and if it had awarded any amount less than that average, the Phisters would not have prevailed under the amended Act. The Phisters also would not have prevailed if the Commission had considered the Government's earlier $211,000 offer based on Dane's estimate and still chose to award $325,000. We cannot say that the Government's appraisals on their face are so out of line with the outcome of the litigation—the Commission's award—as to suggest that the Government's offers in reliance on them were not substantially justified.

The Government adequately explained the difference between its settlement offer and its evidence at trial, as required by *341 Acres*. Appraising real estate is more an art than a science; it is incapable of mathematical precision and implicates methods of

**2.** The report cited approvingly four court decisions applying a test slightly more stringent than reasonableness for substantial justification. H.R.Rep. No. 120, *supra* at 9 n. 15, *reprinted in* 1985 U.S. Code Cong. & Ad. News at 18 n. 15; *see, e.g., Spencer*, 712 F.2d at 558 & n. 67 (citing other cases). In a report accompanying a prior version of the Amendments, which was enacted by Congress but vetoed by the President for reasons unrelated to substantial justification, *see* 20 Weekly Comp. Pres. Doc. 1814–15 (Nov. 12, 1984), Congress explicitly adopted the "slightly more stringent" language and stated that one of the purposes of the test was to ensure that "only sound, well-prepared cases be initiated" by the

Government. S.Rep. 586, 98th Cong., 2d Sess. 11–12.

**3.** "Substantial justification is a different and a lesser standard than the substantial evidence standard applied in a review of administrative proceedings. The Government may still prove that its position was substantially justified even if the court does not believe that the case on the merits was supported by substantial evidence on the record as a whole." 131 Cong. Rec. H4763 (daily ed. June 24, 1985) (statement of Congressman Kindness).

judgment. As we have noted above, the valuation of a flowage easement is particularly difficult. It is understandable that the conclusions of absolute value drawn by Dane and Sawyers would differ. There is no hint that Sawyers knew of Dane's appraisal, had been instructed to reach a less generous conclusion or otherwise acted in bad faith. Most significantly, both the Government's pre-trial settlement offer and its trial evidence matched its concurrent appraisals.

The district court offered no specific criticisms of the Government's appraisals, aside from a chiding reference to Dane's personal record of appraisals in other cases. 674 F.Supp. at 598. The court apparently was referring to five other condemnation actions in which Dane's appraisals were more than twice as far from the adjudicated award as the landowners' appraisals. *See* 614 F.Supp. at 607–11 (data supplied by the Government). Although Dane's record in these prior cases perhaps suggests undue conservativism in his appraisals, the relevance of that record is questionable. Dane's appraisals in the present case do not reveal a pattern suggesting a lack of substantial justification in the Government's positions. Because the Government's initial and final settlement offers based on Dane's appraisal were *higher* than Sawyer's appraisal, the Phisters cannot contend that the Government pushed for a lower settlement than it could have justified before the Commission. Regardless of any possible relevance, under the amended Act, the district court should not have considered this evidence, which was not part of the record of the proceedings leading to the condemnation award. *See* 28 U.S.C.A. § 2412(d)(1)(B).

■ The district court also considered the record in other federal condemnation actions involving other appraisers in reaching its decision. It appeared to draw from a wide-ranging comparison with other cases that the Government's position in virtually all condemnation actions is not substantially justified. *See* 614 F.Supp. at 598, 603. The record of prior condemnation actions did not warrant such a sweeping conclusion, especially in light of this court's admonition that the Government in condemnation actions is obligated to offer a just price, not a premium price. In light of the Amendments, however, the district court had no alternative but to confine itself to the record before the Commission and its failure to do so constitutes error.

■ When in a condemnation action the Government selects experienced, qualified, competent appraisers, and consistently relies on their valuations in its offers of just compensation, without any evidence of bad faith on its part, its course of conduct is solid, well founded, and clearly reasonable. Its position, therefore, is substantially justified.

### III.

We conclude that fees should not have been awarded to the Phisters under the Act. The judgment of the district court awarding fees is reversed.