UNITED STATES of America, Plaintiff–Appellee,

v.

Francis J. BRADAC and Elizabeth M. Bradac, Defendants–Appellants.

No. 88–1019.

United States Court of Appeals, Seventh Circuit.

Submitted July 31, 1990.*

Decided Aug. 15, 1990.

Rehearing Denied and Motion to File Amicus Brief Denied Oct. 4, 1990.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

Charles J. Sheehan, Dept. of Justice, Land & Natural Resources Div., Washington, D.C., plaintiff-appellee.

Francis J. Bradac, St. Paul, Minn., pro se.

Elizabeth M. Bradac, St. Paul, Minn., pro se.

Before COFFEY and FLAUM, Circuit Judges, and PELL, Senior Circuit Judge.

FLAUM, Circuit Judge.

The St. Croix River is a picturesque waterway of 164 miles in length that flows steadily through eastern Minnesota and northwestern Wisconsin, eventually merging with the Mississippi River near LaCrosse, Wisconsin. Along its Wisconsin course is Polk County, and the riverfront property of Francis and Elizabeth Bradac (the "Bradacs"). Since the early 1970's, the National Park Service has recognized the uncommon beauty of the St. Croix valley and has been acquiring property along the river through the exercise of eminent domain. Due to these condemnation proceedings, approximately 139.5[1] acres owned by the Bradacs was acquired by the Park Service and is now a portion of the Lower St. Croix National Scenic Riverway Project, a National Park that preserves portions of the St. Croix's path for public enjoyment and recreation.

The Fifth Amendment of the United States Constitution provides that when the government takes private property the landowner must be "justly compensated", but just compensation is an illusive concept. *See, generally, United States v. 0.376 Acres of Land,* 838 F.2d 819, 827 (concurring opinion) (6th Cir.1988). Occasionally the landowner merely accepts the government's initial valuation of the property and deeds over the land for the agreed price. More often, a negotiation process ensues which utilizes conflicting land appraisals, eventually culminating in an agreed settlement. Despite protracted discussions, however, the Bradacs and the National Park Service never reached an understanding of the value of the land in question,[2] ultimately resulting in this litigation.

The Bradacs and the government each used distinctly different methods of determining the value of the parcel; the appraiser retained by the Bradacs used a "development appraisal approach"—speculating what the value of the land would be if it were eventually developed. The government's appraiser used the "market appraisal approach"—a method which compares similar property to determine the condemned parcel's value.

---

1. Of this total acreage, 89.5 acres was to be conveyed in fee simple to the government, and the remaining 50 acres related to a "scenic easement", which apparently prevented the landowner from building any structure which could be viewed from the park lands or cutting standing trees without the express permission of the U.S. Parks Service. Transcript of the testimony of defendants' expert Mr. Peter J. Patchin, redirect examination at p. 81 and recross examination at pages 86–87.

2. For the sake of simplicity, the values expressed for the subject property are referred to as appraised values. In actuality, the values are based on the difference of the value of the land as determined by subtracting the appraised "after taking value" from the appraised "before taking value".

For reasons that remain unclear, the government's appraisal did not compare similar property in the St. Croix River valley that was sold voluntarily near the time of the taking. Perhaps the appraiser chose not to; perhaps no privately sold riverfront property existed locally, as it had been or was in the process of being acquired by the government for the National Park. In any event, the figures provided by the party's respective appraisals varied by a wide margin.

The government's appraisal fixed the price at $41,000 approximately two years before trial. This figure was revised prior to trial by their appraiser to $19,000, to reflect his belief that land prices in the area had become depressed since the $41,000 offer was tendered.[3] Prior to trial on February 9, 1987, the Bradacs offered to settle for $100,000. The government counter-offered 9 days later at $90,000, but apparently the Bradacs now wanted $155,000 and the government's counter-offer went unaccepted. Negotiations stalled.

The clerk of the district court[4] held a settlement conference in an attempt to conserve the court's time, but no compromise was reached. The Bradacs eventually produced their own independent appraisal on the eve of trial which set the value at $155,000, using the development appraisal approach. The one-day trial was held on February 27, 1987 and the question of value was put to the jury, which returned a judgment in the amount of $170,000. That judgment has been paid.

The sole issue in this appeal involves whether the district court properly denied the Bradacs request for attorneys fees and costs pursuant to the Equal Access To Justice Act, 28 U.S.C. § 2412 (the Act). The Act provides in pertinent part as follows:

"Except as otherwise specifically provided by statute, a court *shall award* to a *prevailing party* other than the United States *fees and other expenses, in addition to any costs awarded pursuant to subsection (a) incurred by that party in any civil proceeding ... unless the court finds that the position of the United States was substantially justified or that special circumstances make the award unjust.*" 28 U.S.C § 2412(d)(1)(A) (Emphasis supplied).[5]

This appeal requires that we determine, apparently for the first time in this circuit, our standard for "substantial justification" in a condemnation proceeding. When property appraisals differ so widely, and a jury eventually returns a judgment that was significantly closer to the landowner's appraisal than that of the United States, under what circumstances does the government's position (the amount offered the landowner) lack substantial justification and therefore warrant an award of attorney's fees and costs under the Act?

## STANDARD OF REVIEW

We review the district court's denial of an award of attorneys fees and costs under an abuse of discretion standard. *Shepard v. Sullivan*, 898 F.2d 1267, 1271 (7th Cir. 1990). An abuse of discretion is established only where no reasonable man could agree with the district court. *Hough v. Local 134, IBEW*, 867 F.2d 1018, 1022 (7th Cir.1989) (quoting *Smith v. Widman Trucking & Excavating*, 627 F.2d 792, 796 (7th Cir.1980). An error of law by the district court constitutes an abuse of discretion. *U.S. v. Barber*, 881 F.2d 345, 349 (7th Cir.1989) (quoting *Brunswick Corp. v. Jones*, 784 F.2d 271, 274 n. 2 (7th Cir.1986). As this court has never specifically addressed the issue of the Act's "substantial

**3.** The government's appraiser, Mr. Everett Strand, was not allowed to enter the Bradac property prior to October, 1986. The government's prior appraisal was thus apparently done without the benefit of an actual site visit of the specific Bradac property.

**4.** The Clerk of the U.S. District Court for the Western District of Wisconsin is also a U.S. Magistrate.

**5.** The United States has not argued that the Bradacs are not the "prevailing party" in this litigation, or that "special circumstances" exist which would make an award of attorneys fees unjust. Therefore we need not discuss those issues here.

justification" language in a condemnation proceeding, the district court was guided by the Eighth Circuit's analysis in *United States v. 1,378.65 Acres of Land,* 794 F.2d 1313 (8th Cir.1986).

## ANALYSIS

### I.

Many of our sister circuits have addressed the issue of substantial justification of the United States's position vis a vis the award of attorneys fees under the Act in eminent domain cases, albeit utilizing somewhat varied approaches and at times achieving different results. *United States v. 312.50 Acres (Prince William County),* 851 F.2d 117, 119 (4th Cir.1988) (test of substantial justification "focus[es] upon the relationship between the government's offer, the appraisals, and the valuations established by the government's expert witness during trial, rather than the relationship between the government's offer or deposit and the property owner's counteroffer, if any, or the jury award ..."); *United States v. 0.376 Acres (Knox County),* 838 F.2d 819 (6th Cir.1988) ("the issue of substantial justification is essentially one of reasonableness, as the legislative history shows"); *United States v. 1,378.65 Acres (Vernon County),* 794 F.2d 1313 (8th Cir.1986) (analysis employed by Judge Shabaz in this case, and discussed below); *United States v. Charles Gyurman Land & Cattle Co., et al.,* 836 F.2d 480, 485 (10th Cir.1987) (test of substantial justification should be based upon "[t]he totality of the circumstances as reflected by the record before the court"); *United States v. 640 Acres (Dade County),* 756 F.2d 842, 850 (11th Cir.1985) (test of substantial justification involves weighing the price per acre offered by the government as comparable to awards on similar tracts; finding whether the appraisal was made by a neutral and impartial expert or one regularly employed by the government; whether sound comparables were used in the appraisal; and an exploration of the issue of good faith involving government attempts to reconcile the dispute prior to litigation). Since Judge Shabaz utilized the analysis of the Eighth Circuit, we shall first focus on that approach.

### II.

■ In *United States v. 1,378.65 Acres of Land* the Eighth Circuit stated: [w]hen in a condemnation action the Government selects experienced, qualified, competent appraisers, and consistently relies on their valuations in its offers of just compensation, without any evidence of bad faith on its part, its course of conduct is solid, well founded, and clearly reasonable. Its position, therefore, is substantially justified. *Id.* at 1319.

Here, the district judge focused on the qualifications of the government's appraiser, Mr. Everett Strand, finding him an "experienced, qualified and competent appraiser." (District Court opinion at 8). The district court found that the government utilized Strand's appraisals (both the initial appraisal of $41,000 and the revised $19,000 appraisal) in formulating their "just compensation" offer. Further, Strand at both times utilized comparable parcels in his analysis. These comparable parcels, however, were not from St. Croix River valley, so we do not know on what basis the Bradac's land was compared. (*Id.* at 8). We know only that the district court found that Strand "used comparables containing both wooded areas and waterfront property ..." in his analysis. (*Id.* at 8).

The Bradacs argue that a "developmental approach" should have been utilized by the government's appraiser, not a "market appraisal approach." We disagree. Appellants have offered no legal authority to support this position.

Although we are puzzled that the Government's appraisal did not use actual comparable parcels from the St. Croix area, there has been no showing of bad faith on behalf of the government. Indeed, our review of the record before us shows a history of good faith settlement offers by the United States in this case.

The Fourth Circuit's analysis in *Prince William County* adopted the Eighth Cir-

cuit's test in *U.S. v. 341.45 Acres of Land, St. Louis County, Minnesota*, 751 F.2d 924, 940–41 (8th Cir.1984). Although *341.-45 Acres* was later vacated without opinion or explanation, 786 F.2d 1168 (8th Cir. 1986), its analysis was later reaffirmed by *United States v. 1,378.65 Acres of Land (Vernon County)*, 794 F.2d at 1319. We agree with the Eighth Circuit's analysis and adopt the substantial justification test of 1,378.65 Acres employed by the district court.

## CONCLUSION

We find that the district court did not abuse its discretion when it concluded that the Government selected an experienced, qualified appraiser in Mr. Strand, and that it consistently relied on Strand's appraisals of the Bradacs property in its offers of just compensation. We therefore conclude that the Bradacs were properly denied attorneys fees under the Act.

Finally, one procedural matter must be addressed involving two pending motions before this court. The Bradacs have filed an objection (entitled "Defendants Presentation", filed August 8, 1988) to the Government's citation of additional authority of *United States v. 312.50 Acres (Prince William County)*, which we construe as a motion to strike. The Bradacs have also filed a "Motion To Correct Error" (September 19, 1988), which addresses the developmental vs. market appraisal issue discussed above. The Bradacs object to the representation by the United States that the "[d]istrict court ruled in favor of the U.S. on the issue of valuation," discussed in the response of the United States to the motion to strike additional authority. As we address the totality of the issues on appeal here, both of these motions are hereby denied. The judgment of the district court is therefore

AFFIRMED.

PELL, Senior Circuit Judge, dissenting.

Finding myself not in agreement with the result reached by the majority in this appeal, I respectfully dissent. Subsequent to the entry of a judgment in the amount of the jury award in this case, the landowners filed an application for attorneys' fees and costs under the Equal Access to Justice Act. The trial judge denied this motion and this appeal followed. The majority opinion affirms the action of the district court.

Judge Shabaz addressed the issue of the Act's "substantial justification" relying principally on the Eighth Circuit's analysis of the issue in *United States v. 1,378.65 Acres of Land*, 794 F.2d 1313 (8th Cir. 1986). The majority accepts the use of this case and I have no quarrel with its being the guiding star for the disposition here. My objection is to the application of the test in this case. It appears to me that both the district court and this court are placing overemphasis on the selection of an experienced, qualified, and competent appraiser. I have no reason to question the qualifications in this respect of Everett Strand. There is another prong, however, in the Eighth Circuit's analysis and that is that the condemnor, in relying on the qualities of its appraiser, must also have conducted itself "without any evidence of bad faith on its part."

The landowners for now have set forth a lengthy statement of alleged facts supporting their position that the Government consistently engaged in conduct amounting to bad faith in negotiations. As a result, substantial additional attorneys' fees had to be incurred to take this case through trial. As far as I can determine from the record, very little, if any, of this factual matter was material to, or brought out, in the one-day jury trial on values.

I dissent because the Bradacs simply have not had their day in court on the issue of bad faith and I would hold that we should vacate the ruling below and remand the case for an evidentiary hearing on the unresolved issue of bad faith.