DECISION
Before this Court is Boat Cove Dock Association's (BCDA) appeal of the May 30, 2000 decision of the Coastal Resources Management Council (CRMC). CRMC denied BCDA's application to construct a residential boating facility (dock) consisting of a four (4) foot by thirty-five (35) foot fixed timber pier, a four (4) foot by ten (10) foot ramp, and three floats totaling 144 square feet. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 FACTS/TRAVEL
BCDA is a non-profit incorporated home owners association. It was formed by Gary John (Mr. John) and consists of the owners of three lots in the Arnolda section of Charlestown, Rhode Island. BCDA's specific purposes include the facilitation of "the development and maintenance of a private dock to be utilized by the members of this Association." (Boat Cove Dock Ass'n Articles of Inc. (Feb. 9 1996).)
Mr. John testified that he formed BCDA after he was unable to gain access to the water through either Kenyon Cove Common Dock Association (KCCDA) or Arnolda Improvement Corporation (AIC). (June 23, 1998 Tr. at 96-97.) According to Mr. John, he was never offered the opportunity to have a dock at AIC, and he opted out of his membership after a brief time as a member. See id. Mr. John was unable to gain access to water through KCCDA because after consulting with CRMC staffer John Sposato (Sposato), it was determined that the site from which KCCDA sought to build a dock was unsuitable for that purpose due to wetlands.
Mr. John, in his position as Director of BCDA, applied to CRMC to construct a residential boating facility. After notice, CRMC held a public hearing concerning BCDA's application on June 23, 1998. There was no testimony at the hearing concerning environmental, engineering, or navigational objections to BCDA's application. Rather, BCDA's engineer, William Dowdell, testified that that the dock met all CRMC regulations and that "from a standpoint of depth to support a boating facility it's an ideal situation." Id. at 16-17. Linda Steere, BCDA's expert biologist, testified that the cove appeared to be in good condition biologically; that the dock "would have a very minimal impact on the waters of Ninigret Pond and minimal impact on the waters within Boat Cove itself"; and that she expected there to be "minimal environmental damage as a cumulative impact." Id. at 39, 41-42. The Charlestown harbor master, Leonard Wood, testified that the boat traffic in Boat Cove is "light to moderate"; noted that the mooring field in the vicinity of the proposed dock was to be moved; and opined that the move would also benefit existing docks. Id. at 52, 56-59.
Michael Abruzzi (Abruzzi), a member of the board of directors of AIC, testified in opposition to BCDA's application. Abruzzi testified there were not any docks currently open at AIC, but if Mr. John had remained a member of AIC and had requested a slip, he would have been the first on the waiting list. Id. at 101-105. There was much discussion among CRMC members over the status of BCDA — whether it constituted an "association within an association" and whether that violated CRMC regulations. See id. at 115-120.
CRMC also had before it the reports of its biologist and engineer. CRMC's biologist, Timothy Motte, indicated that he had no biological objections to the proposed dock so long as BCDA adhered to several stipulations. (CRMC Decision Worksheet; Biologist's Report at 2). However, Michael Deveau, a CRMC engineering technician, recommended that CRMC deny BCDA's application. (CRMC Decision Worksheet; Addendum to Engineering Review at 3).
CRMC voted four to three against BCDA's application and issued its decision denying BCDA's application on April 29, 1999. This Court remanded the decision back to CRMC in order for it to hear additional evidence concerning CRMC staffer Sposato's dealings with KCCDA and his recommendation of the proposed dock site. After further hearings, CRMC voted six to three against a motion to approve, and CRMC issued a written decision denying BCDA's application on May 20, 2000.
The decision included twenty-seven Findings of Fact, and based upon these Findings of Fact, CRMC determined that "it appears that the proposed activity will have a reasonable probability of causing a detrimental impact upon the coastal resources of the State of Rhode Island." (Decision at 4.) In pertinent part, CRMC found as Findings of Fact No. 13 that the proposed dock "could create adverse nitrogen impact"; as Findings of Fact No. 16 that the proposed dock "would cumulatively adversely impact the area"; and as Findings of Fact No. 18 that the proposed dock "would significantly interfere with navigation."Id. at 2-3. Additionally, CRMC stated as Findings of Fact No. 14 that BCDA was formed "to circumvent the residential boating facility requirements of the RICRMP." Id. at 2
This timely appeal followed. BCDA requests that this Court reverse CRMC's decision and award attorney's fees.
 STANDARD OF REVIEW
This Court has appellate review jurisdiction over a CRMC decision pursuant to the Administrative Procedures Act, G.L. 1956 § 42-35-15(g):
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, interferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision under this statute, the Superior Court may not substitute its judgment for that of the agency on questions of fact.See Johnston Ambulatory Surgical Ass'n, Inc. v. Nolan, 755 A.2d 799, 805 (R.I. 2000). The review of the Superior Court is limited to a determination of whether there is any legally competent evidence to support the agency's decision. Barrington Sch. Comm. v. Rhode IslandState Labor Relations Bd., 608 A.2d 1126, 1138 (R.I. 1992). "Legally competent evidence is indicated by the presence of `some' or `any' evidence supporting the agency's findings." Rhode Island Pub.Telecommunications Auth. v. Rhode Island State Labor Relations Bd.,650 A.2d 479, 485 (R.I. 1994). If such evidence is absent, the decision can be vacated if it is clearly erroneous in view of the reliable, probative, and substantial evidence contained in the whole record. SeeCosta v. Registrar of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988).
 RESIDENTIAL BOATING FACILITY
Neither party disputes CRMC's jurisdiction over BCDA's application. CRMC, which was established by the legislature, has as its primary responsibility "the continuing planning for and management of the resources of the state's coastal region." G.L. 1956 § 46-23-6(1)(i). CRMC's substantive regulations are entitled "The Rhode Island Coastal Resources Management Program" (RICRMP).
The RICRMP includes regulations regarding residential boating facilities. The applicable provisions of the RICRMP for plaintiff's application are §§ 200.2 (Type 2 Low-Intensity Use), 210.1 (Coastal Beaches), 210.3 (Coastal Wetlands), 210.4 (Coastal Headlands Bluffs, and Cliffs), and 300.4 (Recreational Boating Facilities). Section 200.2(C)(3) provides that "[r]esidential boating facilities . . . may be allowed in Type 2 waters, provided it can be demonstrated that there will be no significant adverse impact to coastal resources, water dependent uses or public's use and enjoyment of the shoreline and tidal waters of the State." It also delineates various circumstances, including interference with navigation, which constitute a significant adverse impact to coastal waters. In considering an application for a recreational boating facility, CRMC must evaluate the proposed facility's potential impacts to Rhode Island's coastal resources; geologic site conditions; potential impacts upon public trust resources; potential navigation impacts; potential aesthetic and scenic impacts; and cumulative impacts associated with the increased density of existing recreational boating facilities in the vicinity. See RICRMP § 300.4(B) 11.
REVIEW OF CRMC's DECISION
BCDA argues that CRMC's decision should be reversed as (1) CRMC exceeded its statutory authority and arbitrarily denied BCDA's application by claiming that it constitutes an "association within an association" and (2) there is no competent evidence to support CRMC's conclusion that BCDA's dock will harm the environment or local navigation. In response, CRMC and the intervenors argue that that BCDA was an "association within an association," and thus did not meet the requirement under CRMP 300.4(B) 2 that "a residential structure be contiguous to any shoreline site for a proposed residential boating facility." CRMC also argues that there is ample evidence in the record to support its findings and conclusions.
Association within Association
According to BCDA, CRMC exceeded it statutory authority and arbitrarily denied its application by claiming that it constitutes "an association within an association." CRMC argues that it properly determined that BCDA attempted to circumvent the "contiguous" requirement by forming a new boating dock association when it had the opportunity to join an existing association.
CRMC "contiguous" requirements are found in RICRMP §§ 300.4(A) 3 and 300.4(B) 2. Section 300.4(A) 3 defines a residential boating facility as a "dock, pier, wharf, or float, or combination of such facilities, contiguous to a private residence, condominium, cooperative or other home owners association properties that may accommodate up to four (4) boats." Section 300.4(B)(2) states that the "Council shall require that a residential structure be contiguous to any shoreline site for a proposed residential boating facility."
A review of the record reveals that CRMC has not read RICRMP § 300.4(B) 2 as applying to home owners associations. Rather, CRMC has excepted home owners associations from the requirement that there be a contiguous residential structure. Council member DiMuro stated:
 "Originally, the sections provided for, if we didn't have a house on a lot, you could not have a dock, then we addressed a situation where an association would come in and ask for a dock on a piece of property that did not have a residence on it, and the sense of the Policy Planning Committee was that it would be better to have one dock on the lot without a residence on it to serve a larger number of upland people . . . ." (June 23, 1998 Tr. at 117.)
Mr. DiMuro also stated that
 "[t]he idea of an association versus an individual lot owner, is that if there was an association, an association came in to build one dock, it can serve multiple people, as opposed, and that's where the requirement came in-I should say the exception, from having to have a home on the lot that has the dock . . . but it was never the intent to have people form new association merely to circumvent the requirement that there must be a residence on a lot in order to have a dock." (March 28, 2000 Tr. at 100-101.)
CRMC Findings of Fact No. 17 also refers to the Council's interpretation of the contiguous requirement and states that
 "[t]he Council normally requires a residential boating facility to have a dwelling on the site, but it has in the past, in order to accommodate the general public, allowed residential boating facilities for dock association where there isn't a dwelling on the site, but it must be kept in mind that the Council does this with great restraint, and the whole purpose of this is to limit the number of docks in a particularly sensitive area." (Decision at 3.)
The record reveals that BCDA is a non-profit incorporated home owners association. Thus, given CRMC's interpretation of its own regulations, BCDA, as a home owners association, should be excepted from the requirement that it have a residential structure on its lot. CRMC, however, in Findings of Fact No. 14 found that BCDA was formed in an attempt to "circumvent the residential boating facility requirements of the RICRMP." (Decision at 2.) Additionally, in Findings of Fact No. 17, CRMC determined that "the availability of the other facilities and the ability of the applicant to join the facility and be number one on the waiting list to have access to a dock and the proposed existing facilities certainly negates the reasoning to create a whole new dock association which the Council determines is a circumvention of our existing polices." (Decision at 3.)
This Court finds that CRMC's examination of Mr. John's intentions in founding BCDA and CRMC's denial of BCDA's application, based in part upon this examination, exceeds CRMC's statutory authority. Rather than granting CRMC broad discretion, the enabling statute "specifically directs the council to be guided by this single overriding criterion: `Preservation and restoration of ecological systems shall be the primary guiding principle upon which environmental alteration of coastal resources will be measured, judged, and regulated.'" Milardo v. CoastalRes. Mgmt. Council, 434 A.2d 266, 271 (R.I. 1981) (emphasis in original, citations omitted). RICRMP 200.2(C) 3 provides that residential boating facilities are allowed so long as the applicant can demonstrate that "there will be no significant adverse impact to coastal resources, water dependent uses or public's use and enjoyment of the shoreline and tidal waters of the State." This Court finds no basis in the enabling statute or in the RICRMP for CRMC to deny a home owners association's application for a residential facility based upon what CRMC perceives to be the founder's intentions in incorporating the association.
Additionally, this Court finds that CRMC was arbitrary and capricious and abused its discretion in considering Mr. John's intent in forming BCDA. The United States Supreme Court has stated that to make a finding of arbitrariness, capriciousness or an abuse of discretion, "the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416; 91 S.Ct. 814, 823-24; 28 L.Ed.2d 136, 153 (1971). In the instant case, CRMC considered Mr. John's intent in forming BCDA, which this Court finds to be irrelevant to whether or not the association has made the requisite demonstration required by RICRMP with regards to an application for a residential boating facility.
Evidence in the Record
In arguing that there is not evidence in the record to support the Findings of Facts, BCDA specifically points to CRMC's findings related to adverse nitrogen impact, navigational hazards, and cumulative impacts. This Court has carefully reviewed the entire record and finds that many of CRMC's findings and conclusions were "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." The Court's review of CRMC's Findings of Facts is discussed below.
Nitrogen Impact
In assessing a proposed dock, CRMC's regulations require that it evaluate "the appropriateness of the structure given the activities potential to impact Rhode Island's coastal resources." RICRMP § 300.4(B) 11(a). In Findings of Fact No. 13, CRMC "finds that boats located in this area could create additional adverse nitrogen impact. By his own admittance, the applicant has a boat with a head, and by other testimony, it was shown that 30 foot boats (which normally have heads) could be berthed at this dock." (Decision at 2.)
BCDA argues that the testimony of Linda Steere, its expert biologist, is contrary to such a finding and that there is no other evidence in the record upon which CRMC can rely to support the finding. However, an administrative board is not always bound by the opinions and conclusions of a qualified expert. A board may reject expert testimony where there is not a sufficient basis for the testimony. See Dean v. Zoning Bd. ofReview of Warwick, 120 R.I. 825, 831; 390 A.2d 382, 386 (1978). A review of the record reveals that CRMC had before it Ms. Steere's testimony, some of which could be interpreted as being based upon her faulty assumption that none of boats docked in the proposed dock would have marine heads. Thus, since the testimony could be considered to be based upon an erroneous factual basis, CRMC was not required to accept that testimony.
However, a determination that CRMC was not required to accept all of Ms. Steere's testimony does not resolve the question as to whether evidence exists in the record which does support CRMC's finding. This court must uphold an agency decision if it finds that after an examination of the whole record, there is "some" or "any" evidence to support the decision. Strafach v. Durfee, 635 A.2d 277, 280 (R.I. 1993) (citations omitted).
Accordingly, this Court has examined the whole record in search of evidence to support Findings of Fact No. 13. Such an examination did not reveal any evidence to support CRMC's finding that there could be additional adverse nitrogen impact given that boats berthed at the proposed dock could have marine heads. Rather, CRMC's own biologist did not reference any potential adverse nitrogen impacts. Additionally, although Ms. Steere testified that boats without a marine head would not impact nitrogen, she did not testify as to the effects that a boat with a marine head would have on nitrogen.
An administrative board may be entitled to rely upon its own knowledge to support its findings. See Monforte v. Zoning Bd. of Review, 93 R.I. 447, 449; 175 A.2d 726, 727-28 (1962). However, in this case, the record reveals that even comments from CRMC members do not support its findings. For example, the CRMC Chairman noted that they "had people testify that there will be no use of marine heads," and he stated that since state law covers the use of marine heads, it was not necessary to include a stipulation which would prohibit marine heads. (June 23, 1998 Tr. at 120-21.) Additionally, the record reflects that CRMC member Mr. Reitsma found Rhode Island's new status as a "no discharge" state to be relevant. According to Mr. Reitsma,
 "[A]rguments were raised that there was a concern with nitrogen being added to the resource area on account of boats being moored there, that the applicants had a boat with a head on it. I understand by now we have no discharge zone for the entire state, so I'm not sure that's still a concern." (March 28, 2000 Tr. at 99.)
 Navigational Hazards
Pursuant to its regulations, CRMC is entitled to deny an application for a residential boating facility if it will interfere with navigation.See RICRMP § 200.2 (C) 3(c). CRMC stated in Findings of Fact No. 15, that "the adverse impact on the mooring field is a consideration in the denial of the application as this dock (taking into consideration the other docks in the area so close to the mooring field) would create a potential navigation hazard" and in Findings of Fact No. 18 "that the proposed facility would significantly interfere with navigation." (Decision at 3.)
BCDA argues that there is no evidence in the record to support these findings. However, CRMC argues that support for these findings can be found in the recommendation of CRMC's engineer, Michael Deveau.
According to BCDA, Mr. Deveau's reports are not probative as he does not provide any factual basis for his recommendation. This Court notes that an administrative board may not rely upon an expert's recommendation that is conclusional and lacks a factual basis. See Marks v. Zoning Bd.of Review, 102 R.I. 545, 551; 232 A.2d 382, 385 (1967) (finding an expert witness opinion to be a "mere assertion completely lacking in probative force" where it was "unsupported by factual data to which such opinion could be related"). Upon review of Mr. Deveau's report, this Court finds, for reasons delineated below, that the report lacks a factual basis and thus is not probative.
In his initial recommendation, Mr. Deveau recommended that the proposed dock be denied since it did not meet setback requirements and was too close to an existing mooring and thus could interfere with navigation and cause congestion. In an addendum to his report, Mr. Deveau noted that BCDA submitted revised plans, there was no longer a problem with the setback, BCDA no longer needed a variance, and there was a staff note indicating that the mooring in question will be moved.
However, despite the fact that BCDA made the changes recommended by Mr. Deveau, he concluded in his addendum:
 "Per the RI CRMP Section 300.4 B.2. `In order to limit cumulative impacts of many individual residential boating facilities, . . . ,' `It is the policy of the Council to manage the siting and construction of recreational boating facilities within the public tidal waters of the state to prevent congestion,' (e.g. navigational hazards). The CRMC has approved a boating facility for an Association approximately 160-feet from this proposed Association dock. To limit the propagation of many boating faculties and their associated impacts (congestion, navigational impacts, lateral/public access impacts) therefore it is recommended the Coastal Council deny this application." (Addendum to Engineering Report at 3.)
Mr. Deveau's conclusion is very general, and he did not state what impact, if any, the proposed dock will have upon navigation or congestion. Rather than offering any factual basis for his conclusion, Mr. Deveau simply recited CRMC's policy and noted that the proposed dock is approximately 160 feet from an existing dock. Given that Mr. Deveau's recommendation is conclusional and without any factual basis, CRMC may not rely upon it as their sole support for their findings as to navigational impact.
The Court reviewed the whole record and did not find evidence to support a finding that the proposed dock will interfere with navigation. Rather, the record reveals that Leonard Wood, the Charlestown harbormaster, testified that the mooring in question will be moved. (June 28, 1998 Tr. at 56.) Furthermore, the Harbormaster testified that moving the mooring would also benefit the members of the dock that is already in existence. See id. at 56-59. Finally, the record shows that the Harbormaster testified that boat traffic "[r]ight within the Boat cove area, it's pretty light to moderate." Id. at 52.
Cumulative Impact
In assessing a proposed dock, CRMC's regulations require that it evaluate the "cumulative impacts associated with the increased density of existing recreational boating facilities in the vicinity of the proposed project." RICRMP § 300.4(B) 11(f). In Findings of Fact No. 16, CRMC found that "with due regard to the capability of coastal areas to support boating and the degree of compatibility with other uses and ecological considerations that this additional association residential boating facility would cumulatively adversely impact the area." (Decision at 3.)
BCDA argues that there is no factual support for this finding, but CRMC points to Mr. Deveau's report as support. However, as previously noted, the record reflects that Mr. Deveau's recommendation is very general and without factual basis. Although he recites CRMC's policy as to cumulative impacts, he does not state what, if any, adverse cumulative impacts the proposed dock will have on the area. Thus, CRMC's reliance upon Mr. Deveau's recommendation as the sole basis for their finding was arbitrary.
This Court reviewed the whole record in search of evidence which would support a finding that the proposed dock will have an adverse cumulative impact on the area and did not find any such evidence. Rather, Ms. Steere testified "[b]iologically, I would think that this would have a very minimal impact of the waters of Ninigret Pond and minimal impact on the waters within Boat Cove itself." (June 28, 1998 Tr. at 41.) In response to the question about the cumulative effect of various docks within the area, she responded "I would expect that there would be minimal environmental damage as a cumulative impact." Id. at 42.
Even if CRMC declines to accept Ms. Steere's testimony, given that she was unaware that there was a marine head on Mr. John's boat, there is not any evidence in the record supporting a finding of adverse cumulative effects. CRMC's own biologist indicated that he did not have any biological objections so long as BCDA adhered to certain stipulations. (Biologist's Report at 2.)
Based upon the aforementioned, this Court finds that CRMC based its conclusion that the dock "will have a reasonable probability of causing a detrimental impact upon the coastal resource of the State of Rhode Island" (Decision at 4) upon findings of fact that are clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; that are arbitrary and characterized by an abuse of discretion; and that exceed its statutory authority. A review of the record does not reveal support for CRMC's conclusion. Rather, the record reveals that the testimony of William Dowdell (BDCA's engineer); Leonard Wood (Charlestown harbor master); and Timothy Motte (CRMC biologist) indicates that the proposed dock complies with CRMC regulations and demonstrates that there will be "no significant adverse impact to coastal resources, water dependent uses or public's use and enjoyment of the shoreline and tidal waters of the State." RICRMP 200.2 § (C) 3. Accordingly, the substantial rights of BCDA have been prejudiced, warranting a reversal.
 ATTORNEY'S FEES
BCDA requests attorney's fees pursuant to G.L. 1956 § 42-92-3(b). A prevailing plaintiff is entitled to reasonable attorney's fees where an agency action was without substantial justification. See G.L. 1956 §42-92-1(b). Substantial justification means that "the initial position of the agency, as well as the agency's position in the proceedings, has a reasonable basis in law and fact." G.L. 1956 § 42-92-2(7). The Rhode Island Supreme Court has adopted the position of United States v.1,378.65 Acres of Land, 794 F.2d 1313, 1318 (8th Cir. 1986), in which the court held that in meeting the substantial justification test "the Government now must show not merely that its position was marginally reasonable; its position must be clearly reasonable, well founded in law and fact, solid though not necessarily correct." Taft v. Pare,536 A.2d 888, 893 (R.I. 1988).
In the instant case, as discussed above, CRMC's position was not well-founded in fact. Rather, there was no support in the record for CRMC's Findings of Fact. Accordingly, this Court finds that reasonable attorney's fees and costs are warranted but reserves judgment as to the amount awarded. A hearing must be held at which all parties may be heard as to the reasonableness of such fees.
CONCLUSION
After a review of the entire record, this Court finds that the May 30, 2000 CRMC decision, which denied BCDA's application, is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; is arbitrary and capricious and characterized by an abuse of discretion; and exceeded its statutory authority. As a result, the substantial rights of BCDA have been prejudiced. Accordingly, this Court reverses the May 30, 2000 decision of CRMC and remands this case to CRMC with instructions that CRMC issue an assent for the construction of the proposed dock, as described in the application submitted to CRMC, with all staff stipulations. Additionally, this Court finds that reasonable attorney's fees and costs are warranted but reserves judgment as to the amount until such time as there is a proper hearing on the matter.
Counsel shall submit the appropriate order for entry in accordance with this decision.